**In re DIXIE RESTAURANTS, INC.**

**No. 96–1129.**

United States Court of Appeals,
Federal Circuit.

Jan. 27, 1997.

Gary N. Speed, P.A., Little Rock, AR, argued, for appellant. Of counsel was Kathryn Bennett Perkins, Rose Law Firm.

Nancy C. Slutter, Associate Solicitor, Patent and Trademark Office, Arlington, VA, argued, for the Commissioner. With her on the brief were Nancy J. Linck, Solicitor, and Albin F. Drost, Deputy Solicitor.

Before MAYER, LOURIE and CLEVENGER, Circuit Judges.

MAYER, Circuit Judge.

Dixie Restaurants, Inc. appeals the decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board, Serial No. 74/353,021 (Oct. 5, 1995), affirming the trademark examining attorney's refusal to register the mark THE DELTA CAFE and design for "restaurant services specializing in Southern-style cuisine" because it was likely to cause confusion with the registered mark DELTA for hotel, motel, and restaurant services. We affirm.

*Background*

In January 1993, Dixie Restaurants, Inc. (Dixie) applied to register THE DELTA CAFE and design, shown below, for "restaurant services specializing in Southern-style

cuisine." Dixie disclaimed the word "cafe." The examining attorney denied registration under section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), in part because it was likely to cause confusion with or be mistaken for the registered mark DELTA, U.S. Reg. No. 1,443,610, for hotel, motel, and restaurant services. That mark was registered in 1987. Dixie appealed to the Trademark Trial and Appeal Board.

The board affirmed the Patent and Trademark Office's (PTO) refusal, concluding that confusion was likely between the two marks because (1) the services (restaurant) of each are "legally identical"; (2) the dominant part of Dixie's mark, "delta," is identical to registrant's mark; and (3) the other elements of Dixie's mark are insufficient to distinguish the two. The board explicitly rejected Dixie's argument that confusion between the two marks was not likely because the registrant had not made significant use of its mark in the restaurant industry, reasoning that it is required to compare the services cited in the application with those in the registration. It said that to permit otherwise "would be to allow an impermissible attack on the registration." Dixie appeals.

### Discussion

■ The PTO may refuse to register a trademark that so resembles a registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive...." 15 U.S.C. § 1052(d) (1994); *Lloyd's Food Prods., Inc. v. Eli's, Inc.,* 987 F.2d 766, 767, 25 USPQ2d 2027, 2028 (Fed.

Cir.1993). Whether a likelihood of confusion exists is "a question of law based on underlying facts." *Lloyd's Food Prods.,* 987 F.2d at 767, 25 USPQ2d at 2028. It is determined on a case-specific basis, applying the factors set out in *In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973). We review the board's ultimate conclusion *de novo* and its factual findings for clear error. *In re Shell Oil,* 992 F.2d 1204, 1206, 26 USPQ2d 1687, 1688 (Fed. Cir.1993).*

■ Dixie first argues that we should reverse the board's opinion as a matter of law "for failure to fully and properly consider the required 13 factors of *DuPont.*" It is true, as Dixie argues, that "it is the duty of the examiner, the board, and this court to find, upon consideration of *all* the evidence, whether or not confusion appears likely." *DuPont,* 476 F.2d at 1362, 177 USPQ at 568. In discharging this duty, the thirteen *DuPont* factors "must be considered" "when [they] are of record." *Id.* at 1361, 476 F.2d 1357, 177 USPQ at 567. However, "not all of the *DuPont* factors are relevant or of similar weight in every case." *Opryland USA Inc.*

---

\* We reject the solicitor's suggestion that the Administrative Procedure Act's "arbitrary and capricious" standard of review applies. *See In re Kemps,* 97 F.3d 1427, 1430–31, 40 USPQ2d 1309, 1312–13 (Fed.Cir.1996).

*v. Great Am. Music Show*, 970 F.2d 847, 850, 23 USPQ2d 1471, 1473 (Fed.Cir.1992); *In re Shell Oil*, 992 F.2d at 1206, 26 USPQ2d at 1688 (the various *DuPont* factors "may play more or less weighty roles in any particular determination"). Indeed, any one of the factors may control a particular case. *DuPont*, 476 F.2d at 1361–62, 177 USPQ at 567.

The board's opinion states that Dixie "discussed at some length each of the [*DuPont*] factors ..., and we have considered each applicable factor." Moreover, the board includes an analysis of the most relevant and important factors, as evidenced by the arguments Dixie makes on appeal. We see no error in the board's decision to focus on the *DuPont* factors it deemed dispositive. *Cf. Koster v. United States*, 231 Ct.Cl. 301, 685 F.2d 407, 414 (1982) (decision need not specifically address every allegation raised).

█ On the merits, we agree with the board that THE DELTA CAFE and design is similar in appearance, sound, and meaning to the registrant's mark. *DuPont*, 476 F.2d at 1361, 177 USPQ at 567 (factor one). The board found that the dominant portion of Dixie's mark, which disclaims the generic word "cafe," is "Delta." *See In re National Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed.Cir.1985) (it is not improper to give more or less weight to a particular feature of a mark). Dixie has not shown that finding to be clearly erroneous. Of course, that dominant portion is identical to the registered mark. Neither the design element nor the generic term "cafe" offers sufficient distinctiveness to create a different commercial impression. Indeed, as the board found, the design is an ordinary geometric shape that serves as a background for the word mark. The identity of the dominant portion of Dixie's mark and the registered mark is especially important in the restaurant industry "because restaurants are often recommended by word of mouth and referred to orally, [so] it is the word portion of applicant's mark which is more likely to be impressed on the consumer's memory." *Giant*

*Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570, 218 USPQ 390, 395 (Fed.Cir. 1983). Notwithstanding arguments to the contrary, *see infra*, we also agree with the board that Dixie's services and the registrant's are identical. *DuPont*, 476 F.2d at 1361, 177 USPQ at 567 (factor two). Because the dominant portion of THE DELTA CAFE and design is identical to the DELTA mark, and because the two marks are for identical services, the two marks are likely to cause confusion.

Dixie's principal challenge ** focuses on the second *DuPont* factor: "[t]he similarity or dissimilarity and nature of the ... services as described in an application or registration or in connection with which a prior mark is in use." *Id.* The gravamen of its argument is that the two marks are actually used for different services because the registrant has not used the DELTA mark for restaurant services. Thus, there is no likelihood of confusion between the two marks. Dixie argues that the board erred in giving conclusive weight to the identification of services in the registrant's trademark, which includes "restaurant services." It claims that the registrant's identification is merely prima facie evidence of its use of the mark for such services, which Dixie overcame with evidence to the contrary. Specifically, it provided declarations to the effect that it could find no evidence that the registrant actually used that mark in connection with restaurant services. The PTO answers that Dixie is merely attempting to circumvent the statutory requirement that arguments that a mark has been abandoned be brought in a cancellation proceeding. We agree with the PTO.

▪█ " 'Likelihood of confusion must be determined based on an analysis of the mark as applied to the ... services recited in applicant's application vis-a-vis the ... services recited in [a] ... registration, rather than what the evidence shows the ... services to be.' " *Canadian Imperial Bank v. Wells Fargo Bank, N.A.*, 811 F.2d 1490, 1493, 1

---

** Dixie also argues that the PTO and the board "refused to consider proof that" the word "Delta" is entitled to narrow protection because it is a common geographically descriptive term and has been the subject of third party usage, and the

registrant and Dixie operate in different trade channels. But the board addressed these issues fully, and Dixie has not established any prejudicial error in that treatment.

USPQ2d 1813, 1815 (Fed.Cir.1987) (quoting approvingly the board's formulation of the test). Indeed, the second *DuPont* factor expressly mandates consideration of the similarity or dissimilarity of the services "as described in an application or registration." 476 F.2d at 1361, 177 USPQ at 567. If the services are identical, "the degree of similarity necessary to support a conclusion of likely confusion declines." *Century 21 Real Estate Corp. v. Century Life of Am.,* 970 F.2d 874, 877, 23 USPQ2d 1698, 1700 (Fed.Cir.1992). Here, the DELTA mark is registered, in part, for restaurant services. The certificate of registration is prima facie evidence of the validity of the registration and the registrant's exclusive right to use the mark in connection with the services specified. 15 U.S.C. § 1057(b) (1994). Dixie's argument that DELTA is not actually used in connection with restaurant services amounts to a thinly-veiled collateral attack on the validity of the registration.

It is true that a prima facie presumption of validity may be rebutted. *See Dan Robbins & Assocs., Inc. v. Questor Corp.,* 599 F.2d 1009, 1014, 202 USPQ 100, 105 (CCPA 1979). However, the present *ex parte* proceeding is not the proper forum for such a challenge. *Id.* ("One seeking cancellation must rebut [the prima facie] presumption by a preponderance of the evidence."); *Cosmetically Yours, Inc. v. Clairol Inc.,* 424 F.2d 1385, 1387, 165 USPQ 515, 517 (CCPA 1970); TMEP § 1207.01(c)(v) (1993); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23.24[1][c] (3d ed. 1996). In fact, *Cosmetically Yours* held that "it is not open to an applicant to prove abandonment of [a] registered mark" in an *ex parte* registration proceeding; thus, the "appellant's argument ... that [a registrant] no longer uses the registered mark ... must be disregarded." 424 F.2d at 1387, 165 USPQ at 517; *cf. In re Calgon Corp.,* 435 F.2d 596, 598, 168 USPQ 278, 280 (CCPA 1971) (applicant's argument that its use antedated a registered mark was effectively an improper collateral attack on the validity of the registration, which should have been made in formal cancellation proceedings).

Dixie claims that it is not arguing that the DELTA mark has been abandoned, only that it has not been used for restaurant services, so there is no likelihood of confusion. However, unless it establishes abandonment, the registration is valid, and we must give effect to its identification of services. *Cosmetically Yours,* 424 F.2d at 1387, 165 USPQ at 517 ("As long as the registration relied upon ... remains uncanceled, it is treated as valid and entitled to the statutory presumptions.").

Dixie argues alternatively that the PTO should pass the mark to publication and allow the registrant to oppose the applicant's mark, if it chooses. But it is the duty of the PTO and this court to determine whether there is a likelihood of confusion between two marks. *In re Apparel, Inc.,* 366 F.2d 1022, 1023, 151 USPQ 353, 354 (CCPA 1966). It is also our duty "to afford rights to registrants without constantly subjecting them to the financial and other burdens of opposition proceedings." *Id.; see also In re The Clorox Co.,* 578 F.2d 305, 308, 198 USPQ 337, 341 (CCPA 1978); McCarthy, *supra,* § 23.24[1][d] (where PTO rejects an application under section 1052(d), "it is no answer for the applicant to ask that the application be passed to publication to see whether the owner of the cited mark will oppose the registration"). Otherwise protecting their rights under the Lanham Act would be an onerous burden for registrants.

### Conclusion

Accordingly, the decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board is affirmed.

*AFFIRMED.*