Mailed:
September 11, 2003

This Disposition Is
Citable as Precedent
of the TTAB

Paper No. 14
GFR

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————————

**Trademark Trial and Appeal Board**

————————

In re Microsoft Corporation

————————

Serial No. 78/013678

————————

William O. Ferron, Jr. of Seed Intellectual Property Law Group, PLLC for Microsoft Corporation.

Barbara Brown, Trademark Examining Attorney, Law Office 116 (Meryl Hershkowitz, Managing Attorney).

————————

Before Cissel, Holtzman and Rogers,
Administrative Trademark Judges.

Opinion by Rogers, Administrative Trademark Judge:

Microsoft Corporation has applied to register

OFFICE.NET on the Principal Register as a trademark for a

wide range of computer software and hardware products.[1]  The

---

[1] The identification, in International Class 9, reads as follows: "Computer software, namely, operating system software; computer server software; computer network management software; computer utility programs; computer software development programs; computer security and authentication software for controlling access to and communications with computers, computer systems and wireless communication devices; computer operating software for use in operating computer peripherals, handheld computers, personal digital assistants, radio pagers, cellular phones,

application, filed June 21, 2000, is based on applicant's

assertion that it has a bona fide intention to use the mark

in commerce.

The examining attorney refused registration on two

grounds.  First, in view of the prior registration of

OFFICENET for various items of computer hardware and

software[2], the examining attorney has refused registration

---

television and cable set-top boxes, game consoles, digital video disc (DVD) players, digital video records, radios, personal electronic devices, digital audio players, CD players and public communication kiosks; a full line of application and business software; game software for use on computers, game machines for use with televisions and video game players; browser software for computer networks, wireless networks and global communication networks; computer programs for managing communications and data and information exchange over computer networks, wireless networks and global communication networks; computers; computer peripherals; laptop computers; handheld computers; personal digital assistants; radio pagers; cellular phones; television and cable set-top boxes; video game machines for use with televisions; digital video disc (DVD) players; digital video recorders; radios; personal electronic devices, namely personal digital assistants, personal handheld electronic devices for scheduling appointments, digital audio players, CD players, wireless communication devices, cellular telephones; and public communication computer kiosks."

[2] Registration No. 2,189,592, issued September 15, 1998 to Ily Enterprise, Inc., and listing November 9, 1995 as the registrant's date of first use and first use in commerce.  The goods identified in the registration are as follows:  "computer hardware, computer operating software, computer buffers, computer chips, computer memories, computer workstation, comprising one or more of the following, a computer incorporating a housing, computer memory, information processor, video card, sound card, disk drive, operating software, power supply, computer cables and connectors, and a printer, monitor, modem, mouse and keyboard all used in connection therewith; computer discs, namely, blank discs, blank floppy discs, and blank hard discs; computer interface boards, computer keyboards, computer monitors, computer peripherals, computer printers, computer accessories, namely, add-on or interface cards; computer terminals, computers and

under Section 2(d) of the Lanham Act ["Act"], 15 U.S.C. § 1052(d). Second, the examining attorney has also refused registration on the ground that applicant's OFFICE.NET designation will be perceived as merely descriptive of the identified goods and is therefore barred from registration under Section 2(e)(1) of the Act, 15 U.S.C. § 1052(e)(1).

When the refusal was made final on both of these grounds, applicant filed an appeal. Applicant and the examining attorney have filed briefs. Applicant requested and later waived oral argument. Before we turn to analysis of the respective grounds for refusal, a summary of the record will be helpful.

***The Record***

The examining attorney's initial office action included a copy of information regarding the cited registration, retrieved from the USPTO's computerized database of registered and pending marks, and a dictionary definition of the word "office."[3] In its response to the

---

instructional manuals sold as a unit, condensers, electrical conductors, electrical connectors, converters, power supplies, network adapters, network cables, network hubs, controller cards, sound cards and CD ROM drives," in International Class 9.

[3] The action also included a copy of information retrieved from the Office's database regarding another application, which the examining attorney noted might eventually be an additional basis for the Section 2(d) refusal. That application later was abandoned for failure to file a statement of use and is therefore of no further relevance.

initial office action, before addressing either refusal, applicant included a brief section entitled "The Nature of Applicant's OFFICE.NET Mark," wherein it referenced submitted copies of various web pages. Some of these are from entities which apparently monitor or report on computer technology, specifically, "PCWORLD" (http://pcworld.pricegrabber.com), "Computer Weekly" (http://www.cw360.com) and "ZDNET Tech Infobase" (http://cma.zdnet.com); it appears that one or more of these three web sites may also allow visitors to actually order products that are discussed or reviewed, although that is not entirely clear from the copies of the web pages themselves and has not been said to be so by applicant. Applicant also submitted reprints of web pages from the Seattle Times (http://archives.seattletimes.nwsource.com) and numerous reprints of web pages from applicant's own web site (http://www.microsoft.com).

Additional evidence attached to the examining attorney's final office action includes a reprint from an online "Acronym Finder" (self-proclaimed to be "The web's most comprehensive database of acronyms, abbreviations and initialisms") which lists the first two of many meanings

4

for NET as "Internet" and "Network."[4] Further, the examining attorney attached reprints of pages from "Webopedia" (self-proclaimed to be "The #1 online encyclopedia dedicated to computer technology") that include detailed information about the term "network" as it relates to computers. Finally, the examining attorney attached reprints of various web pages to show that various software producers or vendors utilize the word "office" to refer to certain types of software.

Applicant, with its request for reconsideration of the final refusal, resubmitted copies of all the web pages submitted in response to the initial office action, and added numerous pages of articles from various publications or wire services that apparently were retrieved from a database service called DIALOG. (Applicant does not discuss the source of this material, but merely refers to these reprints as "press articles that discuss applicant's OFFICE.NET product still under development.")

Finally, we have taken judicial notice of certain dictionary definitions. University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983). We

---

[4] The listing of definitions is preceded by the explanation "(Most Common definition(s) listed first)."

note, however, that some of these definitions are from a dictionary published by applicant and have not been given the same weight as dictionaries published by non-interested parties, in terms of our consideration, *infra*, of how applicant's mark will be perceived.

### *The Section 2(d) Refusal*

Our determination under Section 2(d) of the Act is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. *See* In re Majestic Distilling Co., Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); In re E.I. du Pont de Nemours and Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). Two key considerations are the marks and the goods or services. Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The means of distribution and sale, although certainly relevant, are areas of peripheral inquiry. The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.").

In this case, though applicant asserts that "differences between these marks and goods are sufficient to avoid a likelihood of confusion" (brief p. 8), it does

6

not actually present any argument why the goods are different. In fact, the goods in the involved application and registration are in part identical (e.g., computers, computer operating software, and computer peripherals); and others are closely related (i.e., applicant's identification includes a number of software products for running various hardware products, including many listed in registrant's identification). *See* In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984) (Likelihood of confusion may be found when goods are not the same or even competitive, for it is sufficient if they are related in some way or that the circumstances under which they are marketed are such that persons encountering the branded goods would assume a relationship or common source).

We turn then to consideration of the marks. In doing so, we are mindful of the proposition that when marks appear on or in connection with virtually identical or closely related goods, the degree of similarity of the marks necessary to support a conclusion of likely confusion is not as great as when the goods are different. Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992), and In re L.C. Licensing, Inc., 49 USPQ2d 1379, 1381 (TTAB 1998).

7

Applicant argues that the "." ["dot"] in OFFICE.NET renders OFFICENET and OFFICE.NET both visually and aurally distinct. Specifically, applicant argues that the "." in OFFICE.NET will be seen and will lead to the composite being pronounced as OFFICE-DOT-NET, while the mark in the cited registration would be seen and pronounced as OFFICE-NET. The examining attorney argues that OFFICENET and OFFICE.NET are virtually the same in appearance and that applicant's insertion of the "." between OFFICE and NET may be overlooked by many consumers. In addition, the examining attorney argues that there is no way to control how consumers will verbalize a mark or term and that many may not bother to articulate the "dot" in applicant's OFFICE.NET designation, when calling for the goods.

In response, applicant argues that the examining attorney's conclusion that the "dot" element may not be seen as significant and may not be verbalized when calling for applicant's goods, "ignores both the realities of the marketplace and nature of the relevant consumers." More specifically, applicant essentially asserts that the "dot" element will not be viewed as distinct from the OFFICE and NET elements but, rather, will be seen as allied with NET, so that consumers will view OFFICE.NET as a combination of applicant's asserted OFFICE mark for business software

8

applications and its asserted .NET mark for new products and services that will be part of a new generation of distributed computing on the Internet.[5]

We do not find persuasive applicant's argument that consumers will visually perceive OFFICE.NET as a combination of two asserted marks of applicant, i.e., OFFICE and .NET, because this argument presumes each of these coupled terms will, individually, be recognized as a Microsoft mark.  The argument, in essence, is that consumers who encounter the OFFICE.NET designation used in conjunction with a computer or computer operating software will not be confused because they will know they are considering purchasing a Microsoft product.  Applicant does not, however, explain why the average consumer would reach such a conclusion.

Applicant does not claim that either of these asserted marks is registered; and while applicant has put material

---

[5] We note that applicant, in its own dictionary, defines "Office" as "*n.* Microsoft's family of individual and business application software suites for the Windows and Macintosh platforms.  Office is built around three core products: Word for word processing, Excel for spreadsheets, and Outlook for e-mail and collaboration."  Microsoft Computer Dictionary 374 (5th ed. 2002).  And it defines ".NET" as "n. The set of Microsoft technologies that provides tools for connecting information, people, systems, and devices.  The technologies provide individuals and organizations with the ability to build, host, deploy, and use XML Web service connected solutions."  Microsoft Computer Dictionary 360 (5th ed. 2002).

9

into the record that shows that it sells products under various OFFICE designations (e.g., "Office 2000" and "Office XP")[6], there is nothing to indicate that it has sold a .NET product.  All of the materials in the record concerning applicant's .NET products discuss applicant's plans for the future.

To the extent applicant's argument reflects anticipated use of the applied-for mark with applicant's house mark, it is well-settled that use of a house mark in conjunction with a product mark will not serve to prevent a finding of likelihood of confusion when the house mark is not included in the mark for which registration is sought. *See, e.g.*, Interstate Brands Corp. v. McKee Foods Corp., 53 USPQ2d 1910, 1914-15 (TTAB 2000) (When neither the applied-for mark nor a cited registered mark includes a house mark, "determination of likelihood of confusion must be based on the specific marks at issue.").  We cannot simply assume that prospective consumers will view OFFICE.NET, absent any use of a house mark, as a combination of asserted Microsoft marks.

---

[6] In discussing whether computer users, primarily business computer users, will "upgrade" from Microsoft's Office 2000 suite of software to its Office XP suite, the author of an article on the Computer Weekly web site reports that "Office counts for 40% of Microsoft revenues and the rapid uptake of XP is vital for the company."

We acknowledge that applicant asserts that its "family of OFFICE suites, business software applications, are among the best selling software packages in the country." Brief, p. 3. On this record, however, applicant has not shown the extent to which consumers would recognize OFFICE, without contemporaneous use of the Microsoft house mark, as a well-known mark. "Because fame plays such a dominant role in the confusion analysis, …those who claim fame for product marks that are used in tandem with a famous house mark can properly be put to tests to assure their entitlement to the benefits of fame for the product marks." Bose Corp. v. QSC Audio Products Inc., 293 F.3d 1367, 63 USPQ2d 1303, 1308 (Fed. Cir. 2002). Moreover, even if we were to assume that OFFICE alone is a well-known mark for business software, we cannot on this record assume that consumers would also perceive .NET as a Microsoft mark, let alone a well-known one.

Based on the copies of its own web pages and the Dialog "press articles" applicant has submitted, it appears that only those who actively follow the computer technology industry would be candidates for perceiving OFFICE.NET in the way applicant intends it to be perceived. We note, however, that neither identification of goods limits the hardware or software products to traveling in only certain

channels of trade or only to certain classes of consumers. Thus, we must consider that the identified products will include those sold at a full range of prices, and be sold to a wide range of prospective consumers in all usual channels of trade for computer products. In re Dixie Restaurants, 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997) (The second DuPont factor "mandates consideration of the similarity or dissimilarity of the services as described in an application or registration"). Thus, our analysis of the similarities of OFFICE.NET and OFFICENET focuses on the average consumer of a computer hardware or software product, not a technology-savvy "Information Technology" professional who may be more familiar with various manufacturers and vendors of such products, including plans for future products.

We find the marks will be perceived as virtually identical in appearance by an average purchaser of, for example, a box containing computer software pulled from a shelf in a retail outlet for computer products. Likewise, because we believe the examining attorney is correct in observing that it is impossible to control how consumers will pronounce marks, and because the "." in applicant's mark is liable not to be consistently articulated, we find the marks are likely to be verbalized in exactly the same

12

manner by many consumers. Thus, there is a likelihood of confusion for an average purchaser of computer software, attempting to order applicant's or registrant's products by phone or asking for them by name in a retail outlet.

We find the virtually identical look and sound of the marks to dictate a finding that the marks are similar for likelihood of confusion purposes, even if applicant is correct in its argument that the respective designations may be perceived as having different connotations.[7] In re Lamson Oil Co., 6 USPQ2d 1041, 1042 (TTAB 1987) ("Even assuming arguendo that applicant is correct that TURCOOL and TRUCOOL are different in meaning or connotation, and further assuming arguendo that there is some dissimilarity in sound when the two marks are properly pronounced, the marks TURCOOL and TRUCOOL are so similar in appearance that, under the facts of this case, this alone would cause a likelihood of confusion.").

Given the visual and aural similarity of OFFICENET and OFFICE.NET, the fact that some of the identified goods are

---

[7] Applicant argues that the registered mark will be perceived as identifying only a network of office supply stores selling computer products. We agree that that is one possible connotation for the registered mark. There is, however, nothing in the record to limit the possible connotation of registrant's mark to the one espoused by applicant. Moreover, for reasons discussed herein, we cannot agree that all consumers will perceive applicant's mark in the manner in which applicant intends it to be perceived.

the same and others are related, and given the absence of any restrictions on channels of trade or classes of consumers, we find that confusion would be likely among consumers if OFFICENET and OFFICE.NET were contemporaneously used as trademarks for the identified goods. Accordingly, we affirm the refusal of registration insofar as it is based on Section 2(d) of the Lanham Act.[8]

***The Section 2(e)(1) Refusal***

The question whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used, or will be used, on or in connection with those goods or services and the possible significance that the term would have to the average purchaser or user of the goods or services. *See* In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979); and In re Recovery, 196 USPQ 830, 831 (TTAB 1977).

A proposed mark is considered merely descriptive of goods or services, within the meaning of Section 2(e)(1) of the Lanham Act, if it immediately describes an ingredient,

---

[8] We do not have any doubt about whether confusion is likely to occur; however, we note that, had applicant's arguments about the significance of the "." in OFFICE.NET been persuasive, any doubt thereby raised about likelihood of confusion would have been resolved in favor of registrant. *See* Kenner Parker Toys v. Rose Art Industries, 963 F.2d 350, 22 USPQ2d 1453, 1458 (Fed. Cir.

quality, characteristic or feature thereof, or if it directly conveys information regarding the nature, function, purpose or use of the goods or services. In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987), In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-218 (CCPA 1978). It is not necessary that a term describe all of the properties or functions of the goods or services in order for it to be merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute or idea about them. In re Venture Lending Associates, 226 USPQ 285 (TTAB 1985). Also, a mark need not describe all of the goods or services for which registration is sought; registration must be refused if the mark is merely descriptive of any of the goods or services for which registration is sought. *See* In re Quik-Print Copy Shop, Inc., 616 F.2d 523, 205 USPQ 505, 507 (CCPA 1980); and In re Patent & Trademark Services Inc., 49 USPQ2d 1537, 1539 (TTAB 1998).

The examining attorney argues that prospective purchasers of the goods identified in applicant's application will perceive OFFICE.NET as a combination of (1) a descriptive term, i.e., "office" as that term is used

_____

1992); and In re White Swan Ltd., 8 USPQ2d 1534, 1536 (TTAB 1988).

15

to identify office suites of software, and (2) the TLD .net or .NET, which has no source-indicating capacity of its own and merely identifies an entity as a network infrastructure organization.[9]  Thus, the examining attorney concludes that prospective purchasers will consider the composite designation as indicating that products identified in applicant's application are "office" type products from a particular type of business, specifically, a network infrastructure business.  Further, the examining attorney argues that, despite applicant's intention that .NET be perceived as something other than a TLD, typing "OFFICE.NET [as part of a web address] does in fact take the computer user to the applicant's web site where they can access the applicant's goods and information about its goods and services."  Brief, p. 11.

Applicant, in its reply brief, does not contest this last point, i.e., that typing OFFICE.NET in a web address will take the computer's user to a web page of applicant's where information on applicant's products is available.  On the other hand, and notwithstanding the examining attorney's unchallenged assertion that typing OFFICE.NET in

---

[9] A "TLD" is defined as "(**T**op-**L**evel-**D**omain) The highest level domain category in the Internet domain naming system.  There are two types: the generic top-level domains, such as .com, .org, and .net, and the country codes, such as .ca, .uk and .jp."  McGraw Hill Computer Desktop Encyclopedia 977 (9th ed. 2001).

16

a web address will bring the computer user to applicant's web site, applicant argues that it "does not use .NET in its OFFICE.NET mark to signify a TLD."[10] Brief, p. 4. Likewise, applicant argues that the OFFICE portion of OFFICE.NET "is perceived by relevant consumers as a reference to applicant's best-selling OFFICE suite of business software applications."[11] Brief, p. 4. Thus, applicant argues that "OFFICE.NET is a composite mark that combines applicant's .NET brand for a new generation of software products and services with its OFFICE product name." Brief, p. 3.

The USPTO bears the burden of establishing a prima facie case in support of a descriptiveness refusal. *See* In re Gyulay, *supra*. The examining attorney is not required to prove that the public would actually view a proposed mark as descriptive, but must establish a reasonable predicate for the refusal, based on substantial evidence, i.e., more than a scintilla of evidence. In re Pacer Technology, __ F.3d __, 67 USPQ2d 1629 (Fed. Cir. 2003).

---

[10] Applicant's own computer dictionary defines ".net" as a TLD, but defines ".NET" as a Microsoft mark. Microsoft Computer Dictionary 359-60 (5th ed. 2002).

[11] Applicant's own computer dictionary, unlike others we have referenced, *infra*, does not include a definition for the term "office suite," but does include a definition of "Office" as identifying a family of Microsoft software suites. Microsoft Computer Dictionary 374 (5th ed. 2002).

In this case, the record includes evidence showing that the term "office" is utilized in the computer software field as a descriptive term for certain types of software. One web page, from an entity designated by the name or acronym SAL (http://sal.kachinatech.com), is entitled "Office Software" and explains that "'Office Software' is referred to as software suites that bundle word processors, spreadsheets, and sometimes presentations or drawing tools, and personal database programs." Also on the SAL web page is a listing of various types of "Office Software," including subsections entitled "Office Suites," "Typesetting & Formatting," "Word Processing & Publishing," "Spreadsheets," "Text Editors," and "Miscellaneous." Another web page, for Crystal Office Systems (http://www.crystaloffice.com), features an array of products under the heading "Office software," and states, "Crystal Office Systems develops high-quality personal and corporate office software…." A web page from Sun Microsystems (http://www.sun.com/dot-com/staroffice.html) entitled "Free Office Software on the Web," promotes the "great office productivity suite," of a recently acquired subsidiary. Called StarOffice™, the suite's "easy-to-use productivity tools" are reported to include programs for, among other things, word processing, making spreadsheets,

18

creating presentations and graphics, managing and handling calendars, to-do lists and e-mail.  A sidebar on the web page contains links to Sun columns and press releases.  One is titled "EXECUTIVE PERSPECTIVE The New Model for Home and Office Productivity by Scott McNealey" and another is titled "Sun Takes Office Productivity to the Net."  Finally, a web page for the Corel Corporation (http://www3.corel.com), titled "Corel Store," features a product overview of "WordPerfect® Office 2002-Professional Edition" and includes the following description:  "Power up your office with the time-saving innovations … of WordPerfect® Office 2002-Professional Edition … latest version of the suite you know and love."

Also in regard to "office," we note the following dictionary definitions:

> **office suite** A package containing several productivity programs (typically a word processing program, a spreadsheet program, a presentation graphics program and an e-mail client).  The leading office suite is Microsoft Office;  others include ApplixWare, Corel WordPerfect Office, Lotus SmartSuite, and StarOffice.
> Webster's New World Dictionary of Computer Terms 382 (8th ed. 2000).

> **office suite**  See *application suite*.
> **application suite**  Also known as an "office suite," it is a set of applications designed to work together.  It typically includes word processing, spreadsheet, presentation graphics and database programs.  Some of the programs may

19

be available separately, while others come only in the bundle. Microsoft Office, WordPerfect Office and Lotus SmartSuite are the major business application suites for Windows. Sun's StarOffice is a new contender that is expected to become popular.
McGraw Hill Computer Desktop Encyclopedia 35, 693 (9th ed. 2001).

The examining attorney also points out that .NET is a TLD and has cite an Office "Examination Guide" and the TMEP to show that a TLD "does not add source identifying significance" when combined with another term. We find that .net or .NET designate a TLD. See footnote 9, *supra*, and Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 50 USPQ2d 1545, 1558 (9th Cir. 1999) ("Web addresses are not caps-sensitive"); *see also,* Entrepreneur Media Inc. v. Smith d/b/a EntrepreneurPR, 279 F3d 1135, 61 USPQ2d 1705, 1712 (9th Cir. 2002); and Ford Motor Co. v. Lapertosa, 126 F.Supp2d 463, 62 USPQ2d 1789, 1792 n.2 (E.D. Mich. 2001)..

On this record, we must conclude that "office" is a term used in dictionaries and by applicant's competitors to describe particular types of software. Thus, to the extent that applicant asserts that "Office" is primarily associated with applicant's "office suite" of software, it is necessarily asserting that the term has acquired distinctiveness for applicant's products. There is

20

nothing, however, in the record to support such a conclusion. Applicant does not claim that it has registered the term as a mark, nor has it provided evidence that OFFICE is recognized as a mark by the average consumer of computer hardware or software.

Likewise, while applicant claims that .NET is a brand name for applicant's products and services, the record does not support the claim. The "press articles" and reprints of applicant's web pages that were submitted with applicant's request for reconsideration uniformly refer to ".NET" as a "strategy," or "initiative," or "platform" that is in development. Mere selection of a designation as a future brand name does not automatically result in the creation of trademark rights. Again, applicant has not claimed that it has registered .NET as a mark; and it does not claim that it has actually marketed a .NET product or service. Moreover, applicant has not offered any explanation why the average prospective purchaser of computer hardware or software would perceive .NET, i.e., the capitalized presentation of the TLD .net, as a brand name rather than simply a capitalized TLD.[12] *See* In re

---

[12] Applicant has not claimed that TLDs are case sensitive and that web sites can only be accessed by typing a TLD in lower case lettering, i.e., it has not argued that .NET, if typed as part of web address would not work the same as .net. Nor does it appear

Taylor & Francis [Publishers] Inc., 55 USPQ2d 1213, 1215 (TTAB 2000) ("applicant is a 'publishing establishment' of the type covered by the above-quoted dictionary definition of 'press.'  Applicant has not shown that the word PRESS, as it is used by applicant [in PSYCHOLOGY PRESS], would have any other meaning or significance to the relevant purchasing public").

Because the record before us does not establish the existence of recognized trademark rights in either OFFICE or .NET, each of which applicant asserts is a mark in its own right, we see no foundation for applicant's claim that the composite OFFICE.NET will also be viewed as a mark by the average consumer.

The record does not support applicant's contention that the average consumer would draw an association between applicant and the designation OFFICE.NET.  Rather, on this record, we find the average prospective purchaser of applicant's software, which includes a "full line of application and business software," would perceive the designation as describing "office" type software.[13]  *See In*

---

that applicant could make this argument. *See Brookfield Communications, Entrepreneur Media, and Ford Motor, supra.*

[13] The average prospective purchaser of such products will see the .NET portion of the composite as a TLD and as nothing more than an indication that the "office" products are available via the Internet.

re CyberFinancial.Net Inc., 65 USPQ2d 1789 (TTAB 2002) (BONDS.COM found generic for "providing information regarding financial products and services via a global computer network and providing electronic commerce services via a global computer network, namely, investment research, subscription services, market commentary, portfolio analysis, debt instrument conversion, yield performance, and pricing analysis, with respect to taxable and tax exempt debt instruments, and other related investment products and services, namely, investment securities"); In re Martin Container Inc., 65 USPQ2d 1058 (TTAB 2002) (CONTAINER.COM found generic for "buying, selling, and renting metal shipping containers").

In each of the referenced two cases, the Board held that the applicant was attempting to register a composite of a generic term and a TLD, neither of which had source indicating significance. In the case at hand, we are only faced with a refusal premised on the combination of a descriptive term and a TLD. We find there is nothing in the combination of a descriptive term and a TLD, as contrasted with the combination of a generic term and a TLD, that renders the composite registrable on the Principal Register without a showing of acquired distinctiveness.

Applicant argues that the examining attorney has improperly dissected the composite designation OFFICE.NET into component parts. However, we see no error in the examining attorney's analysis of the composite as the sum of two separate but non-distinctive terms (one term being descriptive and the other term being a TLD). In fact, both applicant and the examining attorney have taken this approach to determining the overall meaning for the composite; they merely disagree as to the meaning to be ascribed to each component. For applicant, the components are two brand names, while for the examining attorney the components are a descriptive term and a TLD. If there has been any dissection of the composite, it has been undertaken equally by applicant and the examining attorney.

In any event, our determination of whether the composite should be refused registration under Section 2(e)(1) is based on our consideration of the whole, not its parts. The combination of the specific term and TLD at issue, i.e., OFFICE and .NET, does not create any double entendre, incongruity, or any other basis upon which we can find the composite any more registrable than its separate elements. The combination immediately informs prospective purchasers that the software includes "office suite" type software and is from a Internet business, i.e., a ".net"

24

type business.  *See* <u>In re Taylor & Francis [Publishers] Inc.</u>, supra at 1216 (TTAB 2000) (PSYCHOLOGY and PRESS, "each merely descriptive of applicant's identified goods… in combination are likewise merely descriptive.  PSYCHOLOGY PRESS directly and immediately informs purchasers that the books bearing those words pertain to psychology, and that they emanate from a publishing establishment (a 'press').");  and <u>In re Patent & Trademark Services Inc.</u>, supra at 1539 (TTAB 1998) ("it is clear that the phrase PATENT & TRADEMARK SERVICES, INC. immediately conveys information concerning characteristics or features of applicant's legal representation services, namely, that the services are rendered with respect to patents and trademarks, and that they are rendered by a corporation").

*Decision*

The refusal of registration under Section 2(d) of the Act is affirmed.  The refusal of registration under Section 2(e)(1) of the Act also is affirmed.