THIS OPINION IS
CITABLE AS PRECEDENT OF
THE TTAB

Hearing:                              Mailed:  November 7, 2006
April 13, 2006                                              PTH


**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

Mattel, Inc.
v.
Funline Merchandise Co., Inc.
_____

Cancellation No. 92040128
_____

Jill M. Petrini and Jonathan M. Eisenberg of Manatt, Phelps
& Phillips, LLP for Mattel, Inc.

Thomas Yong of Law Offices of Thomas Yong for Funline
Merchandise Co., Inc.
_____

Before Hairston, Zervas and Kuhlke, Administrative Trademark
Judges.

Opinion by Hairston, Administrative Trademark Judge:

A petition has been filed by Mattel, Inc. to cancel the

registration issued to Funline Merchandise Co., Inc. for the

mark RAD RODS (RODS is disclaimed) as reproduced below,



for "mechanical action toy vehicles."[1]

As grounds for cancellation, petitioner asserts that for many years, it has been engaged in the manufacture and sale of toys; that it is the owner of Registration No. 2,397,901 for the mark RAD RIGS (RIGS is disclaimed) for "toy vehicles and accessories therefor,"[2] and that, due to the similarity between petitioner's RAD RIGS mark and respondent's RAD RODS mark and the related nature of the goods, respondent's mark is likely to cause confusion with petitioner's mark RAD RIGS.[3]

Respondent, in its answer, admits that petitioner sells toys and that petitioner is the owner of the pleaded

---

[1] Registration No. 2,425,096 issued January 31, 2001 from an application filed January 8, 2000, claiming dates of first use and first use in commerce of June 1, 1999.

[2] Issued October 24, 2000 from an application filed November 18, 1999, claiming first use and first use in commerce in November 1998. Office records do not indicate that the required Section 8 affidavit was filed by the deadline of October 24, 2006. However, in view of the fact that a Section 8 affidavit may be filed within a six-month grace period after the deadline, we have treated this registration as still being in effect.

[3] Petitioner also alleged ownership of Registration No. 2,304,857 for the mark RADICAL RIDES for "toy vehicles and toy vehicle accessories" and a likelihood of confusion with this mark. While a certified copy of this registration was made of record which shows that the registration is subsisting and owned by petitioner, USPTO records show that this registration has been cancelled for failure to file a Section 8 affidavit. Thus, petitioner's claim of likelihood of confusion is moot with respect to this registration. Further, petitioner alleged that "Registrant's mark RAD RODS should not have been permitted in view of Petitioner's family of 'RADICAL' and 'RAD' marks." (Petition at ¶4). Suffice it to say that the evidence offered by petitioner with respect to its use of "RADICAL" and "RAD" marks is insufficient to establish that petitioner owns a family of marks characterized by either the term "RADICAL" or "RAD."

registration.  Respondent denies the remaining allegations of the petition to cancel.[4]

The record consists of the pleadings; the file of the involved registration; the testimony depositions (with exhibits) of petitioner's witnesses, John Buchanan and Kathy Nordgreen; and petitioner's notice of reliance on, inter alia, a certified status and title copy of petitioner's pleaded Registration No. 2,397,901, respondent's responses to petitioner's discovery requests, and copies of newspaper articles.  Respondent did not take testimony; however, it did submit a notice of reliance on two third-party registrations.

Only petitioner filed a brief herein and only petitioner's counsel appeared at the oral hearing.

Petitioner's senior brand manager, John Buchanan, testified that he is responsible for all marketing and product development for petitioner's "Hot Wheels" brand of toy vehicles and accessories.  (Dep. at 8).  Petitioner first marketed a "Hot Wheels" 5-car pack with an assortment of products called RAD RIGS in 1997.  (Dep. at 11).  The products are 1:64 scale vehicles which are sold to retailers in the United States.  The RAD RIGS mark is used on the

---

[4] Respondent also asserted the affirmative defenses of laches, acquiescence, estoppel and unclean hands.  Respondent presented no argument in support of these defenses, and the defenses are not supported by the evidence of record.

product package. (Dep. at 10-11). Petitioner has advertised the RAD RIGS products in its catalogs and displayed them at trade shows. (Dep. at 12). Petitioner is not currently marketing the line of RAD RIGS brand 5-car assortment packs; however, these kinds of products generally stay on store shelves for about two years after the end of production. (Dep. at 15). There is also a secondary market for RAD RIGS products consisting of collector and hobby stores and websites where the products are currently sold. (Dep. at 16).

The little information we have about respondent and its goods comes from respondent's responses to petitioner's discovery requests. Respondent's goods are "1:43 Scale die-cast mechanical action toy vehicles and 1:64 Scale toy vehicles" and the "vehicles have oversized engines and giant tires and come in various colors." (Interrogatory Response No. 1). Respondent's first sale of its goods was March 24, 1999. (Interrogatory Response No. 2). Respondent's RAD RODS mark appears on the product packaging, and on cards accompanying the goods. (Interrogatory Response No. 5).

Insofar as priority is concerned, the evidence of record establishes petitioner's use of the mark RAD RIGS for toy vehicles and accessories since prior to respondent's first use of the mark RAD RODS for mechanical action toy vehicles. Thus, priority rests with petitioner.

We turn then to the issue of whether respondent's mark RAD RODS for its identified goods so resembles petitioner's mark RAD RIGS for its identified goods as to be likely to cause confusion, mistake or deception.

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Company, Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976). See also, In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

Considering first the goods of the parties, it is well established that the issue of likelihood of confusion in a proceeding such as this must be determined on the basis of the identification of goods or services set forth in defendant's involved registration vis-à-vis the identification of goods or services in plaintiff's registration. See Octocom Services Inc. v. Houston Computers Services Inc., 918 F.2d 937, 16 USPQ2d 1783 (Fed.

Cir. 1990); and Canadian Imperial Bank v. Wells Fargo Bank, 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987). Because the identification in petitioner's registration reads "toy vehicles and accessories," without any limitations as to specific types of toy vehicles, we must presume, for purposes herein, that petitioner uses its mark on toy vehicles of all types, including the type set forth in respondent's registration, namely, "mechanical action toy vehicles." Further, in the absence of any limitations in either petitioner's registration or respondent's registration with respect to channels of trade, or classes of purchasers, we must assume that petitioner and respondent sell their respective goods in all of the usual trade channels for goods of this type, e.g., toy stores and mass merchandisers, to all normal classes of customers therefor, e.g., children and adults. Accordingly, we can draw no legal distinction between the parties' goods, trade channels and classes of customers. Indeed, respondent states that "Funline's trademarked RAD RODS products are marketed and promoted in the same or similar manner as Mattel's products" and that the users of respondent's products are "persons aged 5 and up." (Interrogatory Responses Nos. 4 and 11). Moreover, the "accessories" for toy vehicles specified in petitioner's registration are very closely related to respondent's mechanical action toy vehicles.

6

Turning then to the marks, we must determine whether petitioner's mark and respondent's mark, when compared in their entireties, are similar or dissimilar in terms of sound, appearance, connotation and commercial impression. Although the marks must be considered in their entireties, it is well-settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. See In re National Data Corp., 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985). Furthermore, the test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their commercial impression that confusion as to the source of the goods and/or services offered under the respective marks is likely to result. The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. See Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106 (TTAB 1975). Finally, where as in the present case, the marks would appear on legally identical goods, the degree of similarity between the marks which is necessary to support a finding of likelihood of confusion declines. Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2 14698 (Fed. Cir. 1992).

Applying these principles to the marks in the present case, we find that respondent's mark RAD RODS and petitioner's mark RAD RIGS, when compared in their entireties in terms of appearance, sound, connotation and commercial impression are very similar.

In evaluating the similarity of the marks, we note the significance of the disclaimed terms "rigs" and "rods" in connection with the respective goods.  In this regard, we judicially notice that "**rig**" is defined as, inter alia, "a tractor-trailer or, sometimes, the tractor alone." Webster's New World College Dictionary (3d ed. 1997).[5]  In addition, "**rod**" is defined as, inter alia, "[SLANG]  short for hot rod."  Id.  Thus, each mark consists of the term RAD followed by a one-syllable term which describes a type of vehicle -- RIGS, in petitioner's case, signifying a tractor-trailer, and RODS, in respondent's case, signifying a hot rod.  In view of the descriptive nature of the terms RIGS and RODS, and because RAD is the first term in each mark, it is the term RAD which dominates the commercial impression of each mark and is entitled to greater weight in our comparison of the marks.

---

[5] The Board may take judicial notice of dictionary definitions. University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc., 213 USPQ 594 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

Further, we note that because petitioner's RAD RIGS mark is registered in typed drawing or standard character form, the depiction thereof is not limited to a particular manner of display. See, e.g., Phillips Petroleum Co. v. C. J. Webb, Inc., 442 F.2d 1376, 170 USPQ 35, 36 (CCPA 1971). Thus, the registration covers the use of the RAD RIGS mark by petitioner in any reasonable style of lettering, including the manner in which respondent depicts its RAD RODS mark, which increases the visual similarity of petitioner's and respondent's marks.

Although the marks are dissimilar to the extent that the descriptive words RIGS and RODS differ in appearance and sound, and do not have the identical meaning, due to the shared use of the term RAD, the similarities between the marks outweigh the dissimilarities. For the foregoing reasons, we are the opinion that purchasers are likely to believe that the source of RAD RODS mechanical action toy vehicles is the same as, or is associated with, the source of RAD RIGS toy vehicles and accessories.

The coexistence (for a limited period) of the two third-party registrations submitted by respondent does not persuade us to reach a different result herein. Respondent submitted printouts of Registration No. 1,588,037 for the mark RAD RODS for "toy vehicles" and Registration No.

9

1,398,672 for the mark RAD RIG for a "toy vehicle" from the USPTO's electronic records. Apart from the fact that the printouts show that each registration has been canceled, it is well settled that the determination of registrability of those particular marks by the trademark examining attorneys cannot control our decision in the case now before us. See In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001).

Accordingly, we conclude that respondent's mark RAD RODS, when applied to mechanical action toy vehicles, so resembles petitioner's mark RAD RIGS used on toy vehicles and accessories therefor as to be likely to cause confusion, or to cause mistake, or to deceive.

**Decision**:  The petition to cancel is granted.