THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:  January 19, 2007

PTH

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————————

**Trademark Trial and Appeal Board**

————————

In re The W.W. Henry Company, L.P.

————————

Serial No. 78401595

————————

Christine W. Trebilcock of Cohen & Grigsby, P.C. for The W.W. Henry Company, L.P.

D. Beryl Gardner, Trademark Examining Attorney, Law Office 112 (Angela Wilson, Managing Attorney).

————————

Before Hairston, Holtzman and Taylor, Administrative Trademark Judges.

Opinion by Hairston, Administrative Trademark Judge:

On April 4, 2004, The W.W. Henry Company, L.P. filed an application, Serial No. 78401595, to register the mark PATCH & GO in standard character form for goods ultimately identified as "Portland cement based patch for use in patching, repairing or smoothing wall and floor surfaces,

namely, wood, drywall, plaster, concrete, block wall, tile and wood paneling prior to painting or wallpapering."

The trademark examining attorney has refused registration under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), on the ground that applicant's mark, when applied to applicant's goods, so resembles the previously registered mark PATCH 'N GO for "chemical filler preparations for use in the cosmetic repair of polyolefin surfaces,"[1] as to be likely to cause confusion.

When the refusal was made final, applicant appealed. Applicant and the examining attorney have filed briefs.

Before turning to the refusal to register, we must first discuss a preliminary matter. We note that applicant filed its application under Trademark Act Section 1(a) and has alleged November 1, 2004 as its date of first use anywhere and date of first use in commerce. This date, however, is subsequent to the April 4, 2004 filing date of the application. In view thereof, if applicant ultimately prevails herein, the application will be remanded to the examining attorney to allow applicant time to

---

[1] Registration No. 2403568 issued November 14, 2000; Section 8 and 15 declarations have been accepted and acknowledged, respectively. The word PATCH is disclaimed apart from the mark as shown.

file either an amendment to the application to allege a date of first use anywhere and a date of first use in commerce no later than the filing date of the application or an amendment to assert Section 1(b) of the Trademark Act as the basis for the application.  See TMEP §903.05.

We turn then to the refusal to register that is based on likelihood of confusion.  Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the likelihood of confusion factors set forth in In re E. I. duPont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).  See also, In re Majestic Distilling Co., Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).  In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."  Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).  See also, In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

Turning first to the marks, they appear the same but for the "&" in applicant's mark PATCH & GO and the "'N" in the cited mark PATCH 'N GO.  The marks would be pronounced

3

virtually the same and would appear to have the same connotation. Further, the commercial impressions created by the marks are essentially identical. The virtual identity of the marks makes it likely that, if such marks were used in connection with related goods, confusion would result.

Turning then to the respective goods, the examining attorney argues that they are related because they are all used to repair surfaces. Further, the examining attorney maintains that in the absence of any restrictions in applicant's or registrant's identification of goods, it must be assumed that applicant's and registrant's goods may be used to repair surfaces inside or outside a home, and that such goods are offered in the same channels of trade to the same classes of purchasers, namely, do-it-yourselfers, handymen and contractors.[2] In support of her position with respect to the relatedness of the goods, the examining attorney has submitted five third-party registrations in order to show that goods of the type identified in applicant's application and goods of the type

---

[2] Because the precise nature of registrant's "chemical filler preparations for use in the cosmetic repair of polyolefin surfaces" is not readily apparent, the better practice would have been for the examining attorney to submit information about this type of product.

identified in the cited registration can emanate from a single source under a single mark. See In re Albert Trostel & Sons Co., 29 USPQ2d 1783 (TTAB 1993). The registrations are as follows:

> Registration No. 2388824 for the mark PAGEL for, inter alia, concrete repairing mortars and cement based polymer compounds for covering uneven surfaces, filing holes, pores and cracks in concrete.
>
> Registration No. 2918812 for the mark SUPERIOR and design for, inter alia, surface preparations materials, namely, spackling paste, plaster, stucco for use in residential and commercial building construction.
>
> Registration No. 2924644 for the mark PROFIN for, inter alia, building products and drywall joint cements and setting compounds, namely, drywall joint compounds, drywall finishing compounds; building products and drywall cements, plasters, and setting compounds, namely, drywall patching compounds, drywall repairing compounds, powder drywall setting compounds in powder form for heavy fill and sandable surfaces with established setting times.
>
> Registration No. 2902618 for the mark SILPRO for, inter alia, portland cement to be applied as a topping or for the leveling and smoothing of floors as an underlayment, or to repair concrete building elements; and cement plaster stucco for application to wood, masonry and concrete structures.
>
> Registration No. 2896550 for the mark U.S.E. HICKSON PRODUCTS LTD. for, inter alia, sealings, coatings, resurfacers and fillers for coating and repair of foundations, concrete, masonry, horizontal surfaces and floors; wood fillers used to fill and repair gaps, cracks and holes in wood and prefinished wood surfaces; base coat and prime coat cement wall and sealing finish

preparations for concrete, stucco, cement board
and masonry surfaces; patching and repairing
cement; and Portland cement.

Applicant, in urging reversal of the refusal to register, argues that the respective goods are not related because they are used to repair different types of surfaces, and travel in different channels of trade to different classes of purchasers.  In support of its position, applicant submitted Internet printouts from the cited registrant's homepage which show that plastic manufacturers mold or form polyolefin products and that the cited registrant's particular product is used by such manufacturers for the cosmetic repair of poorly molded or damaged polyolefin plastic parts.  (Applicant's Exhibit B). Further, applicant submitted information that describes its own product as, inter alia:

-Versatile -  use over wood, concrete, plaster,
block wall, masonry, brick, drywall, paneling,
ceramic tile, metal & stucco
-Indoor & Outdoor Usage  – for almost any surface
(Applicant's Exhibit A).

Applicant maintains that its product is not for use by plastic manufacturers, but rather by do-it-yourselfers, handymen, and contractors.

It is true that applicant's goods, as identified, include a Portland cement based patch for use in repairing

6

wall and floor surfaces, while the cited registration covers a chemical filler for use in the cosmetic repair of polyolefin surfaces, and therefore they can both be broadly described as preparations for repairing surfaces. However, to demonstrate that goods are related, it is not sufficient that a particular term may be found which may broadly describe the goods. See General Electric Co. v. Graham Magnetics Inc., 197 USPQ 690 (TTAB 1977); Harvey Hubbell Inc. v. Tokyo Seimitsu Co., Ltd., 188 USPQ 517 (TTAB 1975). When we examine the specific items in the identifications, they do not appear to be related in a manner that would be likely to cause confusion. Applicant's application is for a Portland cement based patch for use in patching, repairing or smoothing wall and floor surfaces, namely, wood, drywall, plaster, concrete, block wall, tile and wood paneling prior to painting or wallpapering. This is the type of product that would be offered to do-it-yourselfers, handymen, and contractors through hardware and home improvement stores. On the other hand, the chemical filler preparations identified in the cited registration are specifically limited to use in the cosmetic repair of "polyolefin surfaces." Applicant has submitted extrinsic evidence which shows that polyolefin products are molded by

7

plastic manufacturers and that its goods are used by such manufacturers. See, In re Trackmobile, Inc., 15 USPQ2d 1152 (TTAB 1990) [when the Board is somewhat uncertain as to what the goods identified in the registration are, it is appropriate to consider extrinsic evidence to determine the nature of the registrant's particular goods]. Additionally, we take judicial notice of the following definition of the word "**polyolefin**" in The Random House Dictionary of the English Language (2nd ed. 1987):

> any of a group of thermoplastic, stiff, light, and hard polymers obtained from the polymerization of simple olefins like propylene, used for injection molding, mostly in the automotive and appliance industries."[3]

In view of the above evidence, we cannot accept the examining attorney's unsupported conclusion that the registrant's goods are of a type that would be purchased by do-it-yourselfers, handymen, and contractors for use inside or outside a home. Rather, it appears that registrant's goods are of a type used by plastic manufacturers. It seems to us that, because of the nature of the respective goods, they would be offered to different classes of

---

[3] The Board may take judicial notice of dictionary definitions. See University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

purchasers through different channels of trade.  As such, it is unlikely that there would be any opportunity for confusion to occur.  See Electronic Design & Sales Inc. v. Electronic Data Systems Corp., 954 F.2d 713, 21 USPQ2d 1388 (Fed. Cir. 1992).

Further, there are problems with the five third-party registrations relied on by the examining attorney.  Third-party registrations which individually cover a number of different items and which are based on use in commerce serve to suggest that the listed goods are of a type which may emanate from a single source.  In re Albert Trostel & Sons Co., supra.  However, in this case, only two of the third-party registrations are based on use.  Moreover, upon review, we find that none of the registrations appear to include goods of the type listed in applicant's application and the cited registration.  In particular, none of the registrations cover preparations for the repair of polyolefin surfaces.  Thus, the third-party registrations are insufficient to show that applicant's and registrant's goods are of a type that may emanate from a single source.

We also note that, although applicant's and the cited registrant's mark are very similar, they are also highly suggestive.  Thus, the cited registration is not entitled to a broad scope of protection.  Purchasers are simply

unlikely to assume that all surface repair preparations offered under these highly suggestive marks emanate from the same source.

In view of the differences in the respective goods, and particularly the different purchasers to which they are directed and the different channels of trade through which they are sold, and the highly suggestive nature of the marks, we find that the record does not support a finding of likelihood of confusion.

**Decision**: The refusal to register under Section 2(d) is reversed. The application is hereby remanded to the examining attorney to allow the applicant time to file either an amendment to the application to allege dates of first use no later than the filing date of the application or an amendment to assert Section 1(b) of the Trademark Act as the basis for the application.