THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
29 September 2008

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re RSI Systems, LLC[1]

————

Serial No. 78848532

————

Dexter Chin, Esq. for RSI Systems, LLC.

Katherine Stoides, Trademark Examining Attorney, Law Office 101 (Ronald R. Sussman, Managing Attorney).

————

Before Hohein, Drost, and Cataldo, Administrative Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On March 29, 2006, an application was filed to

register the mark RSI and design, as shown below,



for goods ultimately identified as:

    Ink jet cartridges in Class 2;

    Conveyors, table for sorting, handling and printing
    mail and other substrates, infrared ink dryers, ink
    delivery system consisting of ink storage unit, ink

---

[1] On May 12, 2008, the USPTO recorded an assignment to RSI Systems, LLC from Rheological Solutions, Inc. Reel/Frame No. 3776/0210.

level monitoring unit, tubes for delivering ink and parts therefor in Class 7; and

Ink jet printers, unfilled ink cartridges for computer printers, software for processing images, graphics or text, software to monitor ink delivery, ink delivery system consisting of ink storage unit, ink level monitoring unit, tubes for delivering ink and parts therefor in Class 9.

Applicant, now identified as RSI Systems, LLC, has:

(1) disclaimed the term "RSI";

(2) included a description of the mark as: "The color(s) blue and black is/are claimed as a feature of the mark. The mark consists of a sphere in blue and black with four arcuate lines in white across the middle; 'RSI' in black on the right of the sphere"; and

(3) indicated that the date of first use for all three classes of goods is June 1, 1994, and the date of first use in commerce for all three classes of goods is September 1, 1994.

The examining attorney has refused to register applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), because of two registrations. The first registration (No. 1963981 issued March 26, 1996, renewed) is for the mark RSI, in typed or standard character form, for "printing machines" in Class 7. The owner of the registration is currently identified as Stork Prints B.V. (Reel/Frame Nos. 3263/0613 and 2252/0743). The

second registration (No. 2161680 issued June 2, 1998) is also for the mark RSI (typed). The services in that registration are now limited to "document imaging services in the nature of converting documents from one media to another" in Class 40. The owner is listed as Reproduction Systems, Inc. On June 20, 2008, the registration was renewed in Class 40 only. The remaining three classes for the following services were canceled:

> copying documents for others and managing mail handling facilities for others in Class 35;
>
> electronic document repository services and storage of documentary records and physical evidence for litigation in Class 39; and
>
> consultation in the field of computer networks, custom software development in the fields of document management and graphics presentation, records investigation and research, and preparing graphic presentations for courtroom use in Class 42.
>
> Because those classes have been canceled, they do not

form a bar to registration, and we will only consider the Class 40 services and the examining attorney's arguments based on those services.

The examining attorney argues that the marks are similar because the "literal portions of the marks are essentially identical" (Brief at unnumbered p. 4) and they are the dominant portions of the marks. Regarding the goods, the examining attorney argues that the application and the '981 registration "both identify printing

3

machines." Brief at 9. Furthermore, the examining attorney requests that we take judicial notice of the following definitions (Brief at 9):

> Machine – a system or device … that performs or assists in the performance of a human task;

> Printing – the art, process, or business of producing printed material by means of inked type and a printing press or by similar means; and

> Printer – a device that prints text or graphics on paper.

*The American Heritage Dictionary of the English Language* (4th ed. 2004). We grant the request to take judicial notice. *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

The examining attorney argues that "combining the definitions of the two terms 'printing' and 'machine' results in a meaning that is the same as that of the definition of a 'printer' – a device that prints. In other words, a 'printing machine' is simply a machine that prints, or a 'printer.' Consequently, the registrant's clearly identified goods, albeit broadly identified goods, 'printing machines,' encompass the applicant's specifically identified printers." Brief at 10. She concludes that the marks are used on related goods, *e.g.*, "printing machines, including printers, and related accessories therefore

[sic]." Brief at 3. The examining attorney also points out that both applicant's and the '981 registrant's goods include machines that print labels at high speed. In addition, applicant's goods and the '680 registrant's services both include "imaging and graphics." Final Office Action at 5. Applicant's goods in Class 9 include "software for processing images, graphics or text" and registrant's services include "document imaging services in the nature of converting documents from one media form to another."

Applicant argues that the examining attorney "failed to recognize the presence of a highly distinctive and prominent logo" in its mark. Brief at 5. In addition, applicant maintains that the term "printing machines" is "so broad and all inclusive as to be meaningless." Brief at 7. As a result, applicant argues that the identification should be limited "to only printers that incorporate rotary screen integration technology" (Brief at 8) as shown in registrant's literature.

After the examining attorney made the refusal to register final, this appeal followed.

Inasmuch as the issue in this case is likelihood of confusion, we look at the evidence in light of the factors set out in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d

1357, 177 USPQ 563, 567 (CCPA 1973). *See also In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We point out that "[t]he fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

"The first *DuPont* factor requires examination of 'the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.'" *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) (quoting *du Pont*, 177 USPQ at 567). In this case, applicant's mark and registrants' marks contain the same letters RSI. Because the registrants' marks are displayed in typed form, the marks are not limited to any special stylization and we must assume that they could be displayed in the same style as the letters in applicant's mark. Therefore, the only difference is the fact that applicant adds a design element. However, "[w]ithout doubt the word portions of the two marks are identical, have the same connotation, and give the same commercial impression." *In re Shell Oil Co.*,

992 F.2d 1204, 26 USPQ2d 1687, 1688 (Fed. Cir. 1993).

Indeed, "if one of the marks comprises both a word and a design, then the word is normally accorded greater weight because it would be used by purchasers to request the goods or services." *In re Appetito Provisions Co.*, 3 USPQ2d 1553, 1554 (TTAB 1987). We see no reason why this would not also be true in this case. Both applicant's and registrants' marks contain the identical letters RSI and that is likely how the purchasing public would refer to the sources of the goods and services in this case. While applicant decided to voluntarily disclaim the term RSI,[2] "the filing of a disclaimer with the Patent and Trademark Office does not remove the disclaimed matter from the purview of determination of likelihood of confusion." *Shell Oil*, 26 USPQ2d at 1689. *See also In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985) ("The technicality of a disclaimer in National's application to register its mark has no legal effect on the issue of likelihood of confusion"). Applicant has not shown that the term RSI would not be the dominant term in the mark. It is not a weak term that has little or no

---

[2] *In re MCI Communications Corp.*, 21 USPQ2d 1534, 1538 (Comm'r Pat. 1991) (An "applicant may voluntarily disclaim registrable matter").

source-indicating significance, as a descriptive or generic term would be, as it is perhaps the entity's initials that could have derived from the initials for the term Rotary Screen Integration.[3] Finally, the addition of the sphere in applicant's mark does not significantly change the pronunciation, meaning, or commercial impression of the mark. Despite the presence of the sphere in the mark as shown, , the letters RSI remain a prominent feature of applicant's mark. Therefore, we conclude that the literal portions of the marks are legally identical and the marks in their entirety are very similar in sound, appearance, meaning, and commercial impression.

We now look at the next factor, which involves consideration of the relationship between applicant's and registrants' goods and services. We will start with the '981 registrant's goods. This registrant's goods are identified simply as "printing machines" in Class 7. Applicant argues that the "identification of goods in the

---

[3] The evidence does not indicate that RSI is a generally recognized abbreviation for registrant's goods. *See Modern Optics, Inc. v. The Univis Lens Co.*, 234 F.2d 504, 110 USPQ 293, 295 (CCPA 1956). Inasmuch as registrant's mark is in typed form, its only component is the term RSI. As a registration on the Principal Register, the cited registration is treated as valid and entitled to the statutory presumptions under Section 7(b) of the Trademark Act. *In re Dixie Restaurants, Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534-35 (Fed. Cir. 1997).

cited registration as 'printing machines' is so broad and all inclusive as to be meaningless" and that we should consider "extrinsic evidence showing that the description of the goods has a specific meaning."  Brief at 7.

Applicant relies on *In re Trackmobile, Inc.*, 15 USPQ2d 1152 (TTAB 1990) and *Acomb v. Polywood Plastics Corp.*, 187 USPQ 188 (TTAB 1975).  However, those cases do not provide much support for applicant's position.  Normally, when we address the question of whether goods are related, we must compare the goods as they are described in the application and registration.  *Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed").  *See also Paula Payne Products v. Johnson Publishing Co.*, 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973) ("Trademark cases involving the issue of likelihood of confusion must be decided on the basis of the respective descriptions of goods") and *Dixie Restaurants*, 41 USPQ2d at 1534 (punctuation in original),

9

*quoting, Canadian Imperial Bank of Commerce v. Wells Fargo Bank*, 811 F.2d 1490, 1 USPQ2d 1813, 1816 (Fed. Cir. 1987) ("'Likelihood of confusion must be determined based on an analysis of the mark as applied to the … services recited in applicant's application vis-à-vis the … services recited in [a] … registration, rather than what the evidence shows the … services to be'").

This is not a case where the term in the registrant's identification of goods is so vague that we need extrinsic evidence to determine if the term has a specific meaning in the trade.  Applicant's term "printing machines" is not a term like "light railway motor tractors."  *Trackmobile*, 15 USPQ2d at 1154 ("In the present case, [given] the somewhat vague nature of registrant's description of goods (light railway motor tractors), and given the fact that applicant has presented extrinsic evidence showing that the term 'light railway motor tractors' is used to refer to relatively small, unmanned devices utilized to move loads from point to point within a factory, it is not proper to rely simply upon abstract reasoning to give this somewhat vague term a broad meaning absent countervailing extrinsic evidence showing that it is entitled to such a broad meaning").  Nor is the term "printing machines" so broad as to be virtually meaningless.  *Acomb*, 187 USPQ at 190 ("In

the instant case, 'molded wood products consisting of particulate wood and resin' is so broad and comprehensive as to be devoid of any information as to just what molded wood products are marketed by opposer. It defies one's imagination because molded wood products could be most anything from toys to furniture to building materials to containers and so on"). Applicant here is apparently attempting to do what the *Trackmobile* applicant specifically disavowed, i.e., limiting registrant's goods to the specific product applicant found on the internet. *Trackmobile*, 15 USPQ2d at 1153 ("Applicant acknowledges the foregoing rule of law by noting, by way of example, that if a prior registration utilizes the unambiguous term 'vegetables' as its description of goods, it would be improper for an applicant to argue that in point of fact registrant makes use of its mark only on 'peas'").

At this point, we must compare registrant's "printing machines" as they are identified without reading in any limitations to registrant's goods. In addition to being theoretically related, the actual goods that are involved here underscore the relatedness of the goods. *Bose Corp. v. QSC Audio Products Inc.*, 293 F.3d 1367, 63 USPQ2d 1303, 1310 (Fed. Cir. 2002) ("[T]here is ample evidence of relatedness from the text of the registrations alone. When

the text of the advertising for the ACOUSTIC WAVE product is considered, the conclusion of relatedness is inescapable. The consumers who purchase the Bose product cannot ignore the fact that it, like the QSC product, amplifies via an amplifier"). *See also Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 223 USPQ 1281, 1282 (Fed. Cir. 1984) ("Applicant's proposed [registration] is not limited to spiced teas, and opposer's mark [for teas] is *used* for both spiced and unspiced teas") (emphasis added).

We agree with the examining attorney's argument to the extent that we conclude that printing machines are closely related to applicant's ink jet printers. However, the goods are in different international classes[4] and therefore they are unlikely to be identical.[5] However, applicant

---

[4] While classification is for the administrative convenience of the USPTO, we would not assume that a properly identified term would include goods outside the international class. Otherwise, we would have to assume that goods identified as "mufflers" may be related to items of clothing and automobile parts. TMEP § 1402.03 (5th ed. rev. September 2007) ("If the meaning of such a term can be understood when read in association with the title of the class in which it is placed, and if the term is otherwise satisfactory, the examining attorney need not require amendment to further qualify the term. For example, 'mufflers' in the clothing class would not require further modification to indicate that articles of clothing are intended, rather than automotive mufflers").

[5] If a proposed identification can be classified in more than one class, it is not an acceptable identification of goods or services. *In re Omega SA*, 494 F.3d 1362, 83 USPQ2d 1541, 1544 (Fed. Cir. 2007) (The "scope of the term 'chronographs' is ambiguous for registration purposes, for it includes both watches

agrees that "both Applicant and Stork Prints ['981

registrant] sell 'printing machines.'" Response dated

March 14, 2007 at 3. The examining attorney points out

that:

> [R]egistrant's promotional material (applicant's
> Exhibit A) states that its printers allow for printing
> at high speeds. The promotional material also
> specifies that one of the functions the registrant's
> printers serve is that of printing labels. Similarly,
> the applicant states that its printers are for high
> speed printing and that they are also intended for use
> in printing labels.

Brief at 10-11. *See also* Response dated March 14, 2007 at

3 (Applicant's printing machines utilize thermal ink-jet

coding technology that is suitable for highly customized

output such as labels … at high speed") and Exhibits A, p.4

("Solution for Success in Label Printing") and B.

Furthermore, a review of the literature of applicant

and registrant indicates that both are the source of large

printing machines that are used in a variety of commercial

printing operations. The evidence convinces us that

registrant's printing machines and applicant's identified

ink jet printers, which would include large ink jet

printers that would be used in printing commercial labels,

---

and time recording devices"). "However, the conclusion that a term would clearly include items classified in more than one class should not be drawn unless reasonable, in light of the commercial relationships between all the goods or services identified in the application." TMEP § 1402.03.

are related. Therefore, we find that applicant's goods in Class 9, including ink jet printers, are related to the '981 registrant's printing machines.

We add that applicant's Class 7 goods include "ink delivery system consisting of ink storage unit, ink level monitoring unit, tubes for delivering ink and parts" therefor and its Class 2 goods are "ink jet cartridges." These goods are also related to the '981 registrant's printing machines. The registrant's literature identifies among its "Performance Options":

> - an automatic level control regulates the ink delivery pump maintaining a constant level inside the screen and thereby ensuring optimal consistency in the printed result.

Response dated March 14, 2007, Ex. A at 1. Furthermore, the '981 registrant indicates that its goods are designed to be used with a variety of inks ("Standard colours, fluorescent colours, metallic colours…"). *Id.* at 6. Prospective purchasers familiar with registrant's printing machines and its options and variations in printing capability are likely to assume that applicant's ink delivery system and ink jet cartridges likewise originate from the same source.

Regarding the '680 registration, most of the classes have been cancelled. However, the remaining class contains

the following services:  "document imaging services in the nature of converting documents from one media to another."  Applicant's Class 9 goods include "software for processing images, graphics, and text."  Applicant's software for processing images and the '680 registrant's imaging services that convert documents from one medium to another are very similar.  Consumers familiar with the '680 registrant's document imaging services are likely to assume that registrant is now the source of software that performs some of the same functions.[6]  *In re Association of the United States Army*, 85 USPQ2d 1264, 1271 (TTAB 2007):

> Next, we find that applicant's recited services are related to the goods identified in cited Registration No. 2910619 as "downloadable educational software for teaching users about the armed forces, career education, and military tactics and strategies, and instruction manuals sold as a unit therewith."  For the same reasons as those discussed above in connection with our finding that applicant's association services are related to registrant's employment and career related services, we likewise find that applicant's services are related to registrant's downloadable software to the extent that such software includes "career education" as part of its subject matter.

---

[6] We point out that the class 40 services in the '680 registration are not limited to "for courtroom use," as applicant argues.  We do not read limitations into identifications of goods and services.  *Squirtco v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 940 (Fed. Cir. 1983).  Therefore, registrant's services are not limited to purchasers in the "legal community."  Applicant's Brief at 9.

15

Therefore, the '680 registration services are related to applicant's software in Class 9.

The test for whether goods and services are related is not whether the goods and services are the same or interoperable. It "has often been said that goods or services need not be identical or even competitive in order to support a finding of likelihood of confusion. Rather, it is enough that goods or services are related in some manner or that circumstances surrounding their marketing are such that they would be likely to be seen by the same persons under circumstances which could give rise, because of the marks used thereon, to a mistaken belief that they originate from or are in some way associated with the same producer or that there is an association between the producers of each parties' goods or services." *In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991). *See also Time Warner Entertainment Co. v. Jones*, 65 USPQ2d 1650, 1661 (TTAB 2002). Therefore, we conclude that applicant's and the registrants' goods and services are related.

Purchasers of the respective goods of applicant and the '981 registrant are also likely to be similar, if not overlapping. The registrant's literature indicates that its goods are "[t]ypically used in combination with conventional processes such as flexo, letterpress, offset

16

and rotogravure." Response dated March 14, 2007, Ex. A at 4. A facility that had multiple printing needs would likely be a potential purchaser of both applicant's and the '981 registrant's goods. Similarly, a potential purchaser of the '680 registrant's imaging services is also a potential customer of applicant's broadly identified software for processing images if they would seek the alternative of doing the tasks in-house. Also, the channels of trade for applicant's printers and related equipment and the registrants' printing machines and imaging services are likely to be similar to the extent that they are likely to be advertised in similar publications where purchasers with multiple printing and document imaging needs would look for products and services.

While ink jet printers are not necessarily only purchased by sophisticated purchasers, it nonetheless appears to be the case that purchasers of printing machines and applicant's commercial ink jet printers are likely to be sophisticated. However, "even careful purchasers are not immune from source confusion." *In re Total Quality Group Inc.*, 51 USPQ2d 1474, 1477 (TTAB 1999). *See also In re Hester Industries, Inc.*, 231 USPQ 881, 883 (TTAB 1986) ("While we do not doubt that these institutional purchasing

agents are for the most part sophisticated buyers, even sophisticated purchasers are not immune from confusion as to source where, as here, substantially identical marks are applied to related products"). Even sophisticated purchasers of printing equipment and software and related services would have little basis to distinguish the marks of applicant and registrants when used on the identified goods and services inasmuch as the marks contain the same dominant term "RSI" and the cited registrations contain no other element.

Applicant also refers to the fact that there has been "no actual confusion." Brief at 12. Even if there were some evidence to support this statement, it does not demonstrate that there has been a significant opportunity for confusion to occur. Furthermore, the "lack of evidence of actual confusion carries little weight." *Majestic Distilling*, 65 USPQ2d at 1205.

We conclude that applicant's and registrants' marks are for the identical term RSI and that the addition of applicant's sphere does not significantly change the appearance, pronunciation, meaning or commercial impression of its mark from the registrants' marks. Applicant's goods are related to the '981 registrant's "printing machines." Applicant's Class 9 goods are also related to the '680

18

registrant's Class 40 services.[7]  Under these circumstances, we hold that confusion is likely.

Decision:  The examining attorney's refusal to register applicant's mark under Section 2(d) of the Trademark Act is affirmed.

---

[7] The issue of the co-existence of these registrations is not before us, and we add that, even if there were an issue, this fact would not justify the registration of a confusingly similar mark.  *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987).