# United States Court of Appeals for the Federal Circuit

---

**HYLETE LLC,**
*Appellant*

v.

**HYBRID ATHLETICS, LLC,**
*Appellee*

---

2017-2057

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91213057.

---

Decided: August 1, 2019

---

PATTRIC RAWLINS, Procopio, Cory, Hargreaves & Savitch LLP, San Diego, CA, argued for appellant. Also represented by DAVE DEONARINE.

MICHAEL JOSEPH KOSMA, Whitmyer IP Group LLC, Stamford, CT, argued for appellee. Also represented by BENJAMIN N. LUEHRS.

---

Before MOORE, REYNA, and WALLACH, *Circuit Judges.*

REYNA, *Circuit Judge.*

Hylete LLC appeals from a decision of the Trademark Trial and Appeal Board sustaining Hybrid Athletics, LLC's opposition to Hylete's trademark registration application. We conclude that Hylete waived the arguments on which its appeal relies because it raises new issues that could have been raised and were not considered below. We affirm.

## BACKGROUND

In January 2013, Hylete applied to register a design mark for a stylized letter "H" in International Class 25 for "[a]thletic apparel, namely, shirts, pants, shorts, jackets, footwear, hats and caps." J.A. 76–92. After finding no registrations that would bar registration of the Hylete mark, the Examining Attorney approved the application, and the Trademark Office published the Hylete mark for opposition in the Trademark Official Gazette on June 18, 2013.

On October 16, 2013, Hybrid Athletics, LLC filed a Notice of Opposition on the grounds of likelihood of confusion with its mark under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). Hybrid's mark is also a stylized letter "H." The two marks are shown in the chart below:

| Hylete's Mark | Hybrid's Mark |
|---|---|
| | |

Hybrid's Notice of Opposition pleaded ownership in Application No. 86/000,809 ("the '809 application") for a design mark of its stylized "H" used "in connection with conducting fitness classes; health club services, namely, providing instruction and equipment in the field of physical exercise; personal fitness training services and consultancy; physical fitness instruction" in International Class 41.  J.A. 3, 98–99.  Hybrid also pleaded common law rights from its use of the same mark on "athletic apparel, including shirts, hats, shorts and socks" since August 1, 2008.  *Id.*

During opposition proceedings before the Trademark Trial and Appeal Board ("Board"), Hybrid submitted as an exhibit several images depicting the use of its mark on athletic apparel, including shirts, shorts, and jackets.  The images showed Hybrid's stylized "H" design appearing on the apparel above the phrase "Hybrid Athletics" and several dots:



J.A. 12.

In its briefing before the Board, Hylete focused on the differences in appearance between the two stylized "H" designs. It argued that its mark was a "highly stylized design logo" that "is substantially dissimilar from [Hybrid's] letter 'H' design logo" and "the lettering style of each mark is substantially dissimilar in appearance and each mark exudes its own distinct commercial expression." J.A. 405–07 (heading capitalization removed). Hylete further argued that "the stylization of [Hybrid's] mark[] emphasizes its representation as an 'H,' whereas [Hylete's] mark is a highly stylized design." J.A. 407 (graphics removed).

On December 15, 2016, the Board issued its final decision sustaining Hybrid's opposition to Hylete's registration. J.A. 2–23. Balancing the relevant factors as set forth in *In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357 (CCPA 1973), the Board determined that Hylete's mark would likely cause confusion with Hybrid's "previously-used mark . . . on some of the same goods, namely jackets, shorts, and shirts." J.A. 22–23. The Board also found that Hybrid failed to establish ownership of the '809 application and based its conclusions only on Hybrid's prior common law rights. J.A. 6.

As to the similarity of the marks, the Board recognized that both marks are stylized versions of the letter "H," that both parties' names begin with the letter "H," and that even if consumers attribute no specific meaning to the letter "H," they may nonetheless view the marks in the same manner—as an arbitrary use of the stylized letter "H" for athletic clothing. J.A. 15–18. According to the Board, the average consumer would retain a general rather than specific impression of the marks. J.A. 16 (citing *Grandpa Pidgeon's of Mo., Inc. v. Borgsmiller*, 477 F.2d 586, 587 (CCPA 1973) (noting that the marks in question had "a difference not likely to be recalled by purchasers seeing the marks at spaced intervals")).

The Board considered various design similarities and differences between the two marks. It acknowledged that specific differences can be seen when the marks are compared side by side, but determined the fact that both are stylized versions of the same letter outweighed those differences. The Board determined that the marks have similar commercial impressions and concluded that Hylete's mark is likely to cause confusion with Hybrid's previously used mark.

Hylete filed a request for reconsideration of the Board's final decision. Hylete asserted that the Board erred in three respects, including the Board's purported "misapprehension of the commercial impression of [Hylete's] mark." J.A. 25. Hylete argued "[t]here was no record evidence demonstrating that consumers would view [Hylete's] mark as a stylized H." J.A. 32. Hylete focused on its own mark and did not argue that the Board's analysis should have compared its mark to anything other than Hybrid's stylized letter "H" design mark.

The Board addressed Hylete's commercial-impression argument by noting its "stark contrast" with Hylete's own characterization of its mark as a stylized letter "H" in its briefing:

> When the Board performs its analysis, it will find two distinct letter "H" marks that already co-exist with one hundred and thirty five (135) other "H" marks registered to International Class 25, thirty-three (33) of which are specifically used in connection with athletic-related clothing.

J.A. 32–33 (quoting Hylete's trial brief). The Board also noted that Hylete's arguments based on how the marks would be perceived relied on testimony from its CEO, stating that he did not "see how anyone looking at *these two logos* would think they look alike" but admitting "they *both are H's* [*sic*]." J.A. 33 (emphases added). The Board

therefore rejected Hylete's commercial-impression arguments and denied the request for rehearing. *Id.*

Hylete appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a)(1).

## DISCUSSION

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *In re I.AM.Symbolic, LLC*, 866 F.3d 1315, 1322 (Fed. Cir. 2017). Likelihood of confusion is a question of law based on underlying findings of facts. *In re Chatam Int'l Inc.*, 380 F.3d 1340, 1342 (Fed. Cir. 2004). The Board's underlying findings of fact as to each *DuPont* factor are reviewed for substantial evidence. *Id.* Substantial evidence is "such relevant evidence [that] a reasonable mind would accept as adequate to support a conclusion." *I.AM.Symbolic*, 866 F.3d at 1322 (internal quotations omitted).

On appeal, Hylete argues that the Board erred in its analysis by failing to compare Hylete's stylized "H" mark with what it now characterizes as Hybrid's "composite common law mark," referring to Hybrid's stylized "H" design appearing above the phrase "Hybrid Athletics" and several dots, as shown below:



Appellant Br. 6. According to Hylete, the issues in "this appeal may be summarized into a single question: is Hylete's mark sufficiently similar to [Hybrid's] composite common law mark to be likely to cause confusion on the

part of the ordinary consumer as to the source of the clothing items sold under those marks?" *Id.* As such, Hylete raises on appeal arguments related only to Hybrid's "composite common law mark."

Hybrid responds that Hylete's "composite common law mark" arguments were never raised before the Board and are therefore waived. Appellee Br. 20–22. We therefore first review whether Hylete waived its arguments by not raising them during the proceedings below. We conclude that those arguments are waived.

Generally, federal appellate courts do not consider issues "not passed upon below" or entertain arguments not presented to the lower tribunal. *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008). "[A]bsent exceptional circumstances, a party cannot raise on appeal legal issues not raised and considered in the trial forum." *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1576 (Fed. Cir. 1991); *see also Sw. Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1289 n.7 (Fed. Cir. 2000).

We have articulated limited circumstances in which considering arguments made for the first time on appeal is appropriate: (1) "[w]hen new legislation is passed while an appeal is pending, courts have an obligation to apply the new law if Congress intended retroactive application even though the issue was not decided or raised below"; (2) "when there is a change in the jurisprudence of the reviewing court or the Supreme Court after consideration of the case by the lower court"; (3) "appellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, but only if an issue is properly before the court"; and (4) "where a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below." *Golden Bridge*, 527 F.3d at 1322–23 (quoting *Forshey v. Principi*, 284 F.3d 1335, 1353–57 (Fed. Cir. 2002)).

Hylete does not dispute that it did not present to the Board the question of whether Hylete's mark is sufficiently similar to Hybrid's "composite common law mark" to cause a likelihood of confusion. Hybrid pleaded common law rights to its mark based on use of the mark on athletic apparel and submitted an exhibit showing its use of the so-called "composite common law mark" on athletic apparel. Yet Hylete's arguments in both its briefing to the Board and its request for reconsideration remained focused on the differences between the two stylized "H" design marks. Hylete never contended that Hybrid's common law rights implicated a "composite common law mark" that differed from the stylized "H" design mark identified in the '809 application.

Hylete now attempts to avoid waiver by contending that the Board "*sua sponte*" raised the issue of Hybrid's common law rights in the final decision and used an incorrect legal standard in comparing the two marks. Appellant Reply Br. 4. Hylete's failure to raise that argument in the request for reconsideration negates its contention. Even after the Board purportedly raised the issue of Hybrid's common law rights in its final decision, Hylete did not argue in its request for reconsideration that the Board erred by comparing the wrong marks. Hylete's request for reconsideration instead focused on purported differences between its mark and Hybrid's stylized "H" design mark, and not on Hybrid's "composite common law mark."[1]

---

[1] Hylete in fact made contradictory arguments focused on the stylized "H" design mark. It first admitted that its own mark was a letter "H" before the Board's final decision. J.A. 32–33. And in the request for reconsideration, Hylete took the position that the Board misapprehended the commercial impression of Hylete's mark and "there was no record evidence demonstrating that

Hybrid pleaded and put Hylete on notice of its claim to common law trademark rights from the initial filing of the Notice of Opposition and submitted evidence of its use of its mark on athletic apparel. Hylete could have raised the issue of Hybrid's "composite common law mark" in the opposition proceedings or in the request for reconsideration but did not do so. Thus, none of the exceptional circumstances in which it is appropriate to consider arguments made for the first time on appeal are present here, and declining to consider Hylete's new arguments does not result in injustice. *See Golden Bridge*, 527 F.3d at 1323. We hold that Hylete's arguments based on Hybrid's "composite common law mark" are raised for the first time on appeal and are therefore waived.

## CONCLUSION

Hylete waived its argument that Hylete's mark is sufficiently different from Hybrid's "composite common law mark" to avoid a likelihood of confusion as to the source of the athletic apparel sold bearing those marks. We do not address the Board's analysis of the *DuPont* factors relating to Hybrid's mark; the only issues Hylete raises on appeal concern Hybrid's "composite common law mark." Accordingly, we affirm.

## AFFIRMED

## COSTS

No costs.

---

consumers would view [Hylete's] mark as a stylized H." J.A. 25, 32.