# United States Court of Appeals for the Federal Circuit

_____

**STRATUS NETWORKS, INC.,**
*Appellant*

**v.**

**UBTA-UBET COMMUNICATIONS INC.,**
*Appellee*

_____

2019-1351

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91214143.

_____

Decided: April 14, 2020

_____

JOSHUA JONES, The Law Office of Joshua G. Jones, Austin, TX, argued for appellant.

MATTHEW BARLOW, Workman Nydegger, Salt Lake City, UT, argued for appellee. Also represented by JOHN C. STRINGHAM, DAVID R. TODD, THOMAS R. VUKSINICK.

_____

Before LOURIE, MOORE, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Stratus Networks, Inc., appeals from a Trademark Trial and Appeal Board decision that denied registration of Stratus's trademark on grounds of a likelihood of confusion with a trademark registered to UBTA-UBET Communications, Inc. On appeal, Stratus challenges the Board's likelihood of confusion determination. Because the Board's determination is supported by substantial evidence and is not otherwise legally erroneous, we affirm.

## BACKGROUND

Stratus Networks, Inc., ("Stratus") is a facilities-based telecommunications provider. J.A. 891. On August 15, 2012, Stratus filed U.S. Trademark Application No. 85/704,533, seeking to register the mark shown below ("the STRATUS mark").



UBTA is also a telecommunications provider. J.A. 791. UBTA owns Trademark Registration No. 4,049,700 for the mark shown below ("the STRATA mark").



On December 20, 2013, UBTA opposed registration of the STRATUS mark on grounds of a likelihood of confusion with UBTA's STRATA mark. J.A. 99. On October 29, 2018,

the Board found a likelihood of confusion and refused registration of the STRATUS mark.[1]

### Board Decision

The Board considers the so-called "*DuPont* factors" when assessing the likelihood of confusion. *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973). In the present case, the Board concluded that six of the thirteen *DuPont* factors were relevant to UBTA's opposition. J.A. 10.[2] In sum, the Board determined that two factors "weigh heavily in favor" of finding a likelihood of confusion, one factor "weighs in favor" of finding a likelihood of confusion, two factors are neutral, and one factor weighs "slightly" against finding a likelihood of confusion. *Id.* at 3–27. We discuss the Board's finding on each factor in turn.

The Board found that the first *DuPont* factor—similarity of the parties' marks—"weighs in favor" of finding a likelihood of confusion. J.A. 22–24. The Board analyzed the trademarks in Stratus's application and UBTA's registration and concluded that the marks are similar in appearance and sound. The Board relied on dictionary definitions of the terms "stratus" and "strata" to evaluate

---

[1]    UBTA's opposition also asserted a likelihood of confusion with UBTA's federally registered "STRATA" word mark ("the Word Mark"). After the Board concluded that there was a likelihood of confusion with respect to the STRATA mark, it determined that it was "unnecessary to consider [UBTA's]  other pleaded registration." J.A. 11.

[2]    The Board did not consider *DuPont* factors five (fame), seven (nature of actual confusion), nine (variety of goods), ten (market interface), eleven (applicant's right to exclude), twelve (potential confusion), or thirteen (effect of use). On appeal, no party contends that the Board should have considered any of these additional factors.

similarities in the connotation of each mark. *Id.* The Board found that the terms "differ somewhat in meaning" but found little evidence that relevant consumers would significantly recognize the different meanings. J.A. 23–24. The Board concluded that, on balance, the "marks convey overall commercial impressions that are more similar than dissimilar." J.A. 24.

The Board found that the second *DuPont* factor—similarity of the parties' services—"weighs heavily in favor" of finding a likelihood of confusion. J.A. 13–16. The Board relied on the description of services in Stratus's application and UBTA's registration, and the unrebutted declaration testimony of UBTA's marketing specialist, Mr. Rasmussen. J.A. 13. Mr. Rasmussen testified that each of the services listed in the STRATA mark registration corresponded with services listed in the STRATUS mark application. J.A. 13–15. Based on that evidence, the Board determined that UBTA's "telephone services encompass certain of Applicant's more specifically identified voice communication services and are legally equivalent thereto." J.A. 15.

The Board found that the third *DuPont* factor—similarity of trade channels—also "weighs heavily in favor" of finding a likelihood of confusion. J.A. 16. The Board explained that its finding of legal equivalence between the parties' services gives rise to a presumption that the services "move in the same channels of trade and are offered to the same classes of consumers." *Id.* The Board noted that Stratus failed to rebut that presumption. *Id.*

The Board concluded that the fourth *DuPont* factor—consumer sophistication—was neutral or weighed "slightly" against finding a likelihood of confusion. J.A. 26. The Board considered testimony from Mr. Kevin Morgan, Stratus's CEO. Mr. Morgan testified that Stratus sold customized services to businesses at customized prices and that the average cost of Stratus's services was $130,000. J.A. 25; J.A. 891. In support of his testimony, Stratus

provided a revenue document that showed the average contracted revenue for each of Status's accounts. J.A. 891, 893–920.  UBTA challenged Mr. Morgan's testimony as unsupported because the revenue document was "unintelligible" and lacked foundation.  Opposition No. 91214143, 85 TTABVUE 25–27.  The Board explained that even with the support of the revenue document, Mr. Morgan's testimony on consumer sophistication was insufficient to weigh in favor of finding no likelihood of confusion in this case. J.A. 25.  "Even if we accept" Mr. Morgan's testimony, the Board explained, "the legal identity in part of the services and similarity of the marks outweigh any sophisticated purchasing decision."  *Id.*

The Board found that the sixth *DuPont* factor—strength of the opposer's mark—was neutral to finding a likelihood of confusion.  J.A. 21.  The Board relied on UBTA's registration and dictionary definitions of "strata" to assess the distinctiveness of the STRATA mark.  J.A. 20. The Board found that the mark is "arbitrary or, at most, slightly suggestive of [UBTA's] services in that it connotes levels or divisions in an organized telecommunications system."  *Id.*  The Board also considered evidence submitted by Stratus showing third-party use, including five third-party registrations and five screenshots of third-party websites.  J.A. 17–20.  The Board found that the majority of third-party use was unrelated to the relevant industry: only one website and one trademark registration involved services relating to telecommunications.  *Id.*  The Board also found that "all of the [third-party] marks differ in appearance, sound, meaning, and commercial impression" from the STRATA mark.  J.A. 20.  On balance, the Board found that the "dictionary and third-party use and registration evidence," was "insufficient to diminish the scope of protection to be afforded the [STRATA mark]."  J.A. 22.

The Board found that the eighth *DuPont* factor—length of time during and conditions under which there has been concurrent use without evidence of actual confusion—

was neutral to finding a likelihood of confusion.  Although
the Board found no evidence of actual confusion, the evi-
dence showed the parties' respective marks were not con-
currently used in the same geographic space during the
relevant times:  UBTA offered services in Utah, Wyoming,
Colorado, and Texas, while Stratus offered services in Illi-
nois and Missouri.  J.A. 803, 891.  As a result, the Board
found this factor to be neutral.

In sum, the Board concluded that Stratus's "modest ev-
idence of the sophistication of consumers and weakness of
[the STRATA mark] is insufficient to overcome our findings
with regard to the first, second, and third [*DuPont*] fac-
tors."  J.A. 27.  Accordingly, the Board held that UBTA had
shown by a preponderance of the evidence that Stratus's
mark is "likely to cause consumer confusion when used in
association with its services."  *Id.*

Stratus timely appealed.  We have jurisdiction under
28 U.S.C. § 1295(a)(4)(B).

ANALYSIS

The Lanham Act bars the registration of trademarks
that are likely to cause confusion with a registered mark.
15 U.S.C. § 1052.  The owner of a registered mark who be-
lieves they may be damaged by a trademark application
may commence an opposition proceeding:  an adversarial,
*inter partes* proceeding before the Trademark Trial and Ap-
peal Board.  *Id.* at § 1063; *see also In re I.AM.Symbolic,
LLC*, 866 F.3d 1315, 1328 (Fed. Cir. 2017).

In opposition proceedings, the opposer has the burden
of proving a likelihood of confusion by a preponderance of
the evidence.  *Cunningham v. Laser Golf Corp.*, 222 F.3d
943, 951 (Fed. Cir. 2000).  The Board analyzes likelihood of
confusion based on the *DuPont* factors.  *In re E.I. DuPont
DeNemours*, 476 F.2d at 1361.  Not all *DuPont* factors are
relevant in each case, and the weight afforded to each fac-
tor depends on the circumstances.  *In re Dixie Restaurants,*

*Inc.*, 105 F.3d 1405, 1406–07 (Fed. Cir. 1997). Any single factor may control a particular case. *Id.*

Likelihood of confusion is a question of law based on underlying findings of fact. *Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1173 (Fed. Cir. 2019). We review the Board's fact findings on each *DuPont* factor for substantial evidence. *Id.* For example, "the question of the similarity between two marks and the relatedness of goods are factual determinations." *Swagway, LLC v. Int'l Trade Comm'n,* 934 F.3d 1332, 1338 (Fed. Cir. 2019). Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Hylete*, 931 F.3d at 1173.

## I. Substantial Evidence

Stratus challenges a number of the Board's factual findings on individual *DuPont* factors. In general, Stratus's arguments effectively ask us to reweigh the evidence considered by the Board. That is not the role of this court. Instead, we evaluate whether the Board's factual findings for each considered *DuPont* factor are supported by substantial evidence. *Henkel Corp. v. Procter & Gamble Co.*, 560 F.3d 1286, 1290 (Fed. Cir. 2009). We conclude that they are.

As noted above, the Board based its decision for each of the *DuPont* factors it considered on record evidence. For example, the Board's finding on the similarity of the marks is based on dictionary definitions of the relevant terms, J.A. 789, J.A. 1001–1011, and on the marks themselves, as set forth in Stratus's application and UBTA's registration, J.A. 39, J.A. 753. The Board's finding on the similarity of services and the similarity of trade channels is based on the services identified in Stratus's application and UBTA's registration, J.A. 79, J.A. 753, as well as the unrebutted declaration testimony of UBTA's Marketing and Public Relations Manager, Mr. Rasmussen, J.A. 798–804. The Board's finding on the strength of UBTA's mark is based

on dictionary definitions of the relevant terms, J.A. 789, J.A. 1001–1011, and third-party registrations and websites, J.A. 941–954, J.A. 1013–1021. The Board's finding on actual confusion is supported by testimony from Stratus's CEO, Kevin Morgan, J.A. 890–891, and testimony from Mr. Rasmussen, J.A. 803. We conclude that a reasonable mind would accept this record evidence as adequate to support the Board's conclusions. As such, we hold that the Board's decision as a whole is supported by substantial evidence. *Hylete*, 931 F.3d at 1173. We are not persuaded by Status's arguments to the contrary.

Stratus argues that the record evidence supports a different conclusion than that reached by the Board. For example, Stratus contends that (i) the marks are not similar in appearance because "there is no S in the STRATUS Design Mark orb, . . . [only] the tail of the S cuts through the orb"; (ii) the Board focuses too much on the fact that the marks are similar in sound; and (iii) the Board focuses too little attention on the marks' different connotations, that "stratus" refers to a type of cloud while "strata" refers to layers of rocks. Appellant Br. 10, 12; Reply Br. 4. None of these arguments demonstrate that the Board's finding lacks substantial evidence. Even if Stratus were correct that different conclusions may reasonably be drawn from the evidence in record, we must sustain the Board's decision as supported by the substantial evidence outlined above. *See Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 971 (Fed. Cir. 2018) ("The TTAB's findings may be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence.").

We affirm the Board's determination to bar registration of Stratus's STRATUS mark on grounds of a likelihood of confusion with UBTA's STRATA mark.

## II. Legal Error

Stratus separately argues that the Board committed legal error when considering the *DuPont* factors related to

consumer sophistication and actual confusion.  *E.g.*, Appellant Br. 24.

## A.  Consumer Sophistication

Stratus argues that the Board "did not properly consider" the consumer sophistication factor when it evaluated the likelihood of confusion.  Reply Br. 2; Appellant Br. 24.  Specifically, Stratus argues that the Board "made no express finding as to this factor and instead simply quoted case law that even sophisticated customers are not immune from confusion."  Reply Br. 10.  Stratus asserts that, as a result, the Board "improperly discounted" the factor when rendering its likelihood of confusion determination.  Appellant Br. 24.  We disagree.

While the Board is required to consider each *DuPont* factor for which it has evidence, the Board "may focus its analysis on dispositive factors, such as similarity of the marks and relatedness of the goods."  *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1336 (Fed. Cir. 2001); *see also Oakville Hills Cellar, Inc. v. Georgallis Holdings, LLC*, 826 F.3d 1376, 1379 (Fed. Cir. 2016); *In re Dixie Restaurants*, 105 F.3d at 1407 ("We see no error in the [B]oard's decision to focus on the *DuPont* factors it deemed dispositive.").

Contrary to Stratus's argument, the Board did not hold that the consumer sophistication factor can never outweigh the "similarity of the marks" and "similarity of the services" factors.  Rather, the Board determined that "even careful purchasers are likely to be confused by similar marks used in connection with services that are, in part, legally identical."  J.A. 25 (citing *In re Research & Trading Corp.*, 793 F.2d 1276, 1279 (Fed. Cir. 1986)).  While it is preferable for the Board to make explicit findings about each relevant *DuPont* factor, the absence of explicit findings on a given factor does not give rise to reversible error where the record demonstrates that the Board considered that factor and the corresponding arguments and evidence.

*Han Beauty,* 236 F.3d at 1338 (finding no error because, "while the Board did not make explicit findings about the strength of the [opposer's mark], the Board's opinion reveals that the Board considered this factor"); *Weiss Assocs., Inc. v. HRL Assocs., Inc.*, 902 F.2d 1546, 1548 (Fed. Cir. 1990). The parties' extensive arguments to the Board on the consumer sophistication factor and the Board's final written decision demonstrate that the Board sufficiently considered the consumer sophistication factor. *E.g.*, J.A. 25; Opposition No. 91214143, 84 TTABVUE 45–47; 85 TTABVUE 25–27; 86 TTABVUE 27–30. We find no legal error in the Board's decision concerning consumer sophistication.

## B. Actual Confusion

Stratus argues that the Board legally erred in its decision on actual confusion. Stratus argues that the parties' marks have "coexisted for over six years with not one example of actual confusion." Appellant Br. 24. This fact, Stratus explains, combined with the Board's finding that the parties' trade channels overlap, requires a determination that the lack of actual confusion weighs heavily against a likelihood of confusion. *Id.* We disagree.

Although the Board found no evidence of actual confusion, the Board explained that it also considered "the length of time during and conditions under which there has been concurrent use." J.A. 26. The record shows that, although the parties offer similar services in similar trade channels, the parties' services did not geographically overlap. J.A. 803, 891. As a result, the record indicates that no consumers were exposed to both trademarks during the relevant time periods, further reducing the significance of the absence of actual confusion. *See In re Majestic Distilling Co.*, 315 F.3d 1311, 1317 (Fed. Cir. 2003). We find no legal error in the Board's finding concerning the actual confusion factor.

CONCLUSION

We have considered Stratus's other arguments and find them unpersuasive. We affirm the Board's determination that UBTA showed a likelihood of confusion by a preponderance of the evidence.

**AFFIRMED**