THIS OPINION IS
PRECEDENT OF
THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

wbc

Mailed: September 20, 2022

Cancellation No. 92074784

*Narita Export LLC*

*v.*

*Adaptrend, Inc.*

**Before Wolfson, Goodman and Hudis,**
    **Administrative Trademark Judges.**

**By the Board:**

Adaptrend, Inc. (Respondent) owns a registration on the Principal Register for the mark TONOSAMA, in standard characters, for "gift baskets containing candy; candy; candies; gift baskets containing candy and Japanese candies" in International Class 30 (Respondent's Registration).[1]

Narita Export LLC (Petitioner) seeks to cancel Respondent's Registration based on Petitioner's claim of likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), grounded on its alleged prior common law rights in the mark TONOSAMA for "confectionery, namely, candy chocolate, snack foods in the nature of rice-based snack foods, chocolate-based snack foods, coffee-based snack foods,

---

[1] Registration No. 5873672 issued on October 1, 2019. The registration states that the English translation of TONOSAMA is "feudal lord."

wheat-based snack foods, grain-based snack foods, cereal-based snack foods, quinoa-based snack foods, multigrain-based snack foods, ice-cream-based snack foods, frozen-yogurt-based snack foods, corn-based snack foods." In further support of its likelihood of confusion claim, Petitioner pleads ownership of an application to register on the Principal Register the standard character TONOSAMA mark for these same goods (Petitioner's Application),[2] noting that the USPTO refused registration of its application based on a likelihood of confusion with the mark of Respondent's Registration. 1 TTABVUE.[3]

In its answer, Respondent denies the salient allegations of the petition to cancel and enumerates four of what it identifies as affirmative defenses:

1. The Petition to Cancel fails to state a claim upon which relief can be granted;
2. Upon information and belief, Petitioner does not have proper chain of title for its ownership of its cited marks;
3. Upon information and belief, Petitioner's purported assignments of its cited mark are invalid; and
4. Upon information and belief, Petitioner and/or their predecessor in interest have abandoned their rights, if any, in the cited mark.

4 TTABVUE 2-3.

This proceeding now comes before us on Petitioner's motion for summary judgment. Petitioner asserts there are no genuine disputes of material fact regarding

---

[2] Application Serial No. 88665122 was filed October 23, 2019 based on an allegation of use anywhere of March 27, 2016 pursuant to Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a).

[3] Citations to the record or briefs in this opinion include citations to the publicly available documents on TTABVUE, the Board's electronic docketing system. The number preceding "TTABVUE" corresponds to the docket entry number; the number(s) following "TTABVUE" refer to the page number(s) of that particular docket entry. TRADEMARK TRIAL AND APPEAL BOARD MANUAL (TBMP) §§ 106.03, 801.01, 801.03 (2022).

its entitlement to bring a statutory cause of action; its ownership of the common law mark TONOSAMA in the U.S.; its priority of use of the mark in U.S. commerce and its showing of a likelihood of confusion, mistake or deception of consumers.[4] For the reasons that follow, we grant Petitioner's motion.

## I.  Summary Judgment Standard

Summary judgment is an appropriate method of disposing of cases in which the record shows no genuine disputes as to material facts, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(a). In deciding motions for summary judgment, all evidence must be viewed in a light favorable to the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor. The Board may not resolve disputes of material fact; it may only ascertain whether such disputes are present. *See Lloyd's Food Prod. Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029-30 (Fed. Cir. 1993); *Opryland USA Inc. v. Great Am. Music Show Inc.,* 970 F.2d 847, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992); *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1546 (Fed. Cir. 1992).

The burden is on the party moving for summary judgment to demonstrate the absence of any genuine dispute of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden at summary judgment is greater than the evidentiary burden at trial. *See* TBMP § 528.01 and authorities cited therein. When the moving party's motion is supported by sufficient evidence to

---

[4] 25 TTABVUE. The Board has considered the parties' submissions and arguments and presumes the parties' familiarity with the factual bases for the motions. We do not recount all facts or arguments here except as necessary to explain the Board's order.

indicate that there is no genuine dispute of material fact, and that the moving party is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to demonstrate the existence of specific, genuinely disputed facts which must be resolved at trial. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160-61 (1970). The nonmoving party may not rest on the mere allegations of its pleadings or assertions of counsel, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c); TBMP § 528.01.

## II.    Initial Matters

### A. Respondent's Asserted Affirmative Defenses

An answer should include any defenses that the defendant may have to the claim or claims asserted by the plaintiff. Fed. R. Civ. P. 8(b)(1)(A) and 8(c)(1); Trademark Rule 2.114(b)(1), 37 C.F.R. 2.114(b)(1). Although Respondent raised the purported defense of failure to state a claim upon which relief can be granted (enumerated defense No. 1), as the Board has reiterated on several occasions, this is not a true affirmative defense. *John W. Carson Found. v. Toilets.com, Inc.*, 94 USPQ2d 1942, 1949 (TTAB 2010) ("The asserted defense of failure to state a claim is not a true affirmative defense because it relates to an assertion of the insufficiency of the pleading of opposer's claim rather than a statement of a defense to a properly pleaded claim.").

Respondent also asserts the affirmative defenses of abandonment and non-

4

ownership. 4 TTABVUE 3 at ¶¶ 15-17.[5] Neither of these affirmative defenses remain at issue because Respondent answered Petitioner's interrogatories by withdrawing each affirmative defense "without prejudice pending further discovery." 25 TTABVUE 143-44. We agree with Petitioner that because of this withdrawal, Respondent can no longer rely upon the affirmative defenses of abandonment and nonownership, nor can Respondent raise arguments related to these defenses in Respondent's responsive brief. 31 TTABVUE 4-5.

Respondent is therefore estopped from pursuing these defenses within the context of the motion for summary judgment or presenting arguments and evidence related to these defenses. Notwithstanding, because Petitioner relies on common law trademark rights, it has the burden to establish ownership of such rights, as well as priority in these rights and likelihood of confusion. *See, e.g., Exec. Coach Builders, Inc. v. SPV Coach Co.*, 123 USPQ2d 1175, 1180 (TTAB 2017); *Life Zone Inc. v. Middleman Grp. Inc.*, 87 USPQ2d 1953, 1959 (TTAB 2008).

### B. Evidentiary Matters

In support of its motion for summary judgment, Petitioner submits the declarations of its attorney, Ms. RiKaleigh Johnson, and accompanying exhibits; its president, Mr. Keigo Narita, and accompanying exhibits; and the former president of

---

[5] Respondent's assertions of improper assignment and chain of title (4 TTABVUE 3 at ¶¶ 15-16) are subcategories of a non-ownership defense.

Kabushiki Kaisha TI Express ("TI Express"), Mr. Teruhiko Izumi, and accompanying exhibits. 25 TTABVUE 26-180.

In his declaration, Mr. Izumi asserts that, during his time as president of TI Express, TI Express selected and created the TONOSAMA mark and logo, and had its first sale of "TONOSAMA branded candy and snack foods in the U.S. on March 27, 2016"; that TI Express made its sale through its "Amazon seller account 'Dream Express Japan'"; and that Mr. Izumi was the owner of Dream Express Japan. 25 TTABVUE 32-33. In support thereof, Exhibit E of the Izumi declaration includes a screenshot[6] of "TI Express' Amazon seller account Dream Express Japan," which shows the sale of TONOSAMA candy to a customer in "Fenton, MI" with a purchase date of March 27, 2016, and a ship by date of "Mon, Mar 28 to Tue, Mar 29, 2016." *Id.* at 33, 119 at Exhibit E.

Mr. Izumi further declares that on October 20, 2020, he executed a nunc pro tunc trademark assignment to Petitioner with an effective date of November 25, 2016, which memorialized the parties' "oral trademark assignment of the TONOSAMA mark to [Petitioner]" along with the goodwill associated with the mark; that TI Express made "substantial sales of the TONOSAMA products from March 27, 2016, until it assigned its TONOSAMA assets to Petitioner in November, 2016"; that sales by TI Express and subsequently by Petitioner during 2016 "amounted to more than 900 independent sales in the U.S. … in excess of $22,000." *Id.* at 33-34. In support thereof, the Izumi declaration includes a copy of that nunc pro tunc assignment. *Id.*

---

[6] The website accessed is sellercentral.amazon.ca/orders-v3/order/109-3362950-8206635 on July 4, 2021. 25 TTABVUE 119.

at 106-07. The nunc pro tunc assignment reads that TI Express is assigning to Petitioner "all right, title and interest in and to [TONOSAMA], and any and all goodwill associated with [TONOSAMA] … pursuant to an oral agreement between the Parties." *Id*. at 106.

Mr. Narita, in his declaration, repeats the assertions regarding TI Express' assignment of the TONOSAMA mark and TI Express' and Petitioner's sales of TONOSAMA goods in 2016. *Id*. at 30-31. Mr. Narita further asserts in his declaration that after Petitioner acquired the TONOSAMA mark, it "continued to make substantial sales of products in connection with the TONOSAMA mark"; that "since January 1, 2017, [Petitioner] has made more than 6,600 independent sales into the U.S. … in excess of $78,000"; and that sales were made through Petitioner's Amazon account "world bridge from Japan" with the date of first sale in the U.S. using the TONOSAMA mark being November 25, 2016. *Id*. at 31.

Respondent argues these declarations are inadmissible hearsay and lack foundation. Specifically, Respondent asserts that Mr. Izumi does not claim he participated in the oral agreement, only that he was president at the time of the oral agreement and that he executed the nunc pro tunc assignment; that Mr. Izumi does not provide any documents referring to the oral agreement (e.g., emails, texts, bank draft for payment); and that to the extent Mr. Izumi was told about the oral agreement or is otherwise relying on his position as the custodian of record, no

7

evidence in the record supports an exception to otherwise disqualify the statements as hearsay, such as the business records hearsay exception. 30 TTABVUE 10.

As to the Narita declaration, Respondent asserts that Mr. Narita does not specifically indicate that he "personally participated in the alleged oral agreement, that he personally witnessed the oral agreement, or that he was told about the alleged oral agreement"; that Mr. Narita provides no corroborating details or documents; that it is not clear if Mr. Narita was president of Petitioner at the time of the oral agreement; and that to the extent Mr. Narita was told about the agreement, there is no evidence to support an exception to the hearsay rule. *Id*. at 12-13.

Affidavits or declarations may be submitted in support of, or in opposition to, a motion for summary judgment provided that they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Pursuant to Fed. R. Evid. 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Testimony, even of a single witness, if "sufficiently probative," may be sufficient to prove priority. *Powermatics, Inc. v. Glebe Roofing Products Co.*, 341 F.2d 127, 144 USPQ 430, 432 (CCPA 1965); *Kohler Co. v. Baldwin Hardware Corp.*, 82 USPQ2d 1100, 1108-09 (TTAB 2007). The determinative factor is whether the testimony is "characterized by contradictions, inconsistencies, and indefiniteness" and whether it carries with it conviction of accuracy and applicability. *B. R. Baker*

*Co. v. Lebow Bros.*, 150 F.2d 580, 66 USPQ 232, 236 (CCPA 1945); *see also Powermatics,* 144 USPQ at 432.

Further, a declaration can adequately support a motion for summary judgment when the declarant's position with the employer renders the declarant competent to provide the testimony on the particular issues which the declaration concerns. *See, e.g.*, *In re DBC*, 545 F.3d 1373, 89 USPQ2d 1123, 1131 (Fed. Cir. 2008); *Ava Ruha Corp. dba Mother's Milk Mkt. v. Mother's Nutritional Ctr., Inc.*, 113 USPQ2d 1575, 1578 (TTAB 2015). Mr. Izumi, as the former president of the assignor during the "time of the selection of the TONOSAMA mark, … the first sale of the goods and subsequent sales in 2016, and the oral trademark assignment," 25 TTABVUE 32, and Mr. Narita, as the president of the assignee, *id*. at 30, are positioned to know or have access to information relevant to the substance of their respective declarations and the assignment referenced therein.

We find no genuine dispute of material fact that the Izumi and Narita declarations made a sufficient showing of personal knowledge of the facts stated therein. Although Respondent asserts the declarants failed to lay a proper foundation of personal knowledge, each declaration is based on the declarant's position as president and is based on the declarant's "personal knowledge or on business records that were made at the time or in the regular course of business." 25 TTABVUE 30, 32; *see Kemi*

*Organics, LLC v. Rakesh Gupta,* 126 USPQ2d 1601, 1608 n. 22 (TTAB 2018); *Ava Ruha Corp.*, 113 USPQ2d at 1578 (citations omitted).

Petitioner also submits rebuttal declarations from Messers. Izumi and Narita that respond directly to Respondent's criticism that the declarants did not testify to being present at the time of the alleged oral assignment. Specifically, Mr. Narita declares that he has been "friends with Teruhiko Izumi since January 1, 2015," 31 TTABVUE 14 at ¶2; that he "personally reached an oral agreement with Mr. Izumi to transfer all the right, title and interest in the TONOSAMA trademark to [Petitioner]," *id.* at 14 at ¶3. Mr. Izumi declares that he "personally reached an oral agreement" with Mr. Narita on November 25, 2016 regarding the transfer of the TONOSAMA mark, *id.* at 16 at ¶5.

Because Petitioner's supplemental declarations address a specific argument raised by Respondent in opposition to summary judgment, these declarations constitute proper rebuttal; to that extent we consider them. *Cf. Exec. Coach Builders, Inc.*, 123 USPQ2d at 1176 ("We have accorded the testimony [including rebuttal testimony] and evidence whatever probative value it merits, keeping Applicant's objections [based on admissibility and probative value] in mind"); *Newegg Inc. v. Schoolhouse Outfitters, LLC*, 118 USPQ2d 1242, 1244 (TTAB 2016) (what constitutes proper expert rebuttal testimony discussed); *Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1755 (TTAB 2013) ("The Board does not ordinarily strike testimony taken in accordance with the applicable rules on the basis of substantive objections; rather, such objections are considered by the Board in its

evaluation of the probative value of the testimony at final hearing."), *aff'd mem.*, 565 F. App'x 900 (Fed. Cir. 2014).

## III.    Entitlement to a Statutory Cause of Action

To prevail on summary judgment, Petitioner must demonstrate the absence of a genuine dispute of material fact as to its entitlement to a statutory cause of action. *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at *3 (Fed. Cir. 2020) *cert. denied,* 142 S. Ct. 82 (2021) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26, 109 USPQ2d 2061, 2067 n.4 (2014)). A party in the position of plaintiff may petition to cancel a registration when the cause of action is within the zone of interests protected by the statute, 15 U.S.C. § 1064, and the plaintiff has a reasonable belief in damage that is proximately caused by the continued registration of the mark. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *6-7 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021).

Demonstrating a real interest in cancelling the registration of a mark satisfies the zone-of-interests requirement, and demonstrating a reasonable belief in damage by the registration of a mark suffices to show damage proximately caused by registration of the mark. *Corcamore, LLC*, 2020 USPQ2d 11277, at *7-8. "In most settings, a direct commercial interest satisfies the 'real interest' test." *Herbko Int'l v. Kappa Books*, 308 F.3d 1156, 64 USPQ2d 1375, 1377 (Fed. Cir. 2002).

In its motion for summary judgment, Petitioner identifies as an undisputed fact the Office's refusal to register Petitioner's Application and includes printouts from

the USPTO's TRADEMARK STATUS AND DOCUMENT RETRIEVAL (TSDR) database, of Petitioner's Application showing current active status and title in Petitioner along with copies of the Office's refusal to register Petitioner's Application because of a likelihood of confusion with Respondent's Registration. 25 TTABVUE 4-5, 59-64. Respondent's response to summary judgment acknowledges these facts are undisputed. 30 TTABVUE 7. Therefore, there is no genuine dispute that Petitioner has a legitimate interest in seeking cancellation of Respondent's Registration and a reasonable belief in damage should Respondent's mark continue to be registered. *See, e.g.*, *Empresa Cubana del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *Hole In 1 Drinks, Inc. v. Michael Lajtay*, 2020 USPQ2d 10020, at *3 (TTAB 2020); *ShutEmDown Sports Inc. v. Lacy*, 102 USPQ2d 1036, 1041 (TTAB 2012); *Life Zone Inc.*, 87 USPQ2d at 1959 (entitlement to oppose found because the opposed application was cited as a potential bar to opposer's registration).

We find there is no genuine dispute of material fact regarding Petitioner's entitlement to a statutory cause of action.

## IV.    Petitioner's Claim under Trademark Act Section 2(d)

Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), provides that a likelihood of confusion claim for cancellation of a registration that has been on the Principal Register for fewer than five years may be brought on the basis of a petitioner's "ownership of 'a mark or trade name previously used in the United States . . . and not abandoned.'" *Exec. Coach Builders, Inc.*, 123 USPQ2d at 1180 (quoting 15 U.S.C. § 1052(d)).

### A. Priority

As the plaintiff herein, Petitioner bears the burden of establishing its priority, that is of proving its claim of acquisition of prior proprietary rights in the TONOSAMA mark. *Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.*, 811 F.2d 1470, 1 USPQ2d 1772, 1773 (Fed. Cir. 1987); *cf. Embarcadero Techs., Inc. v. RStudio, Inc.*, 105 USPQ2d 1825, 1834 (TTAB 2013). Because Petitioner does not own a U.S. registration, it bears the burden of demonstrating no dispute of material fact that it owns a proprietary interest in its pleaded mark through use of its mark prior to any date upon which Respondent may rely. *See Herbko Int'l*, 64 USPQ2d at 1378; *Hydro-Dynamics*, 1 USPQ2d at 1773; *Otto Roth & Co. v. Univ. Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 43-45 (CCPA 1981); *Giersch v. Scripps Networks, Inc.*, 90 USPQ2d 1020, 1023 (TTAB 2009).

In considering evidence of prior use, we must not consider individual portions of the summary judgment record in isolation, but must "look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use." *Kemi Organics, LLC,* 126 USPQ2d at 1605-06 (quoting *W. Fla. Seafood Inc. v. Jet Rests. Inc.*, 31 F.2d 1122, 31 USPQ2d 1660, 1663 (Fed. Cir. 1994)). "Oral testimony [or in this case, testimony in written declarations], if sufficiently probative, is normally satisfactory to establish priority of use in a trademark proceeding." *Powermatics,* 144 USPQ at 432; *see also Exec. Coach Builders, Inc.*, 123 USPQ2d at 1184; *Nat'l Bank Book Co. v. Leather Crafted Pros., Inc.*, 218 USPQ 826, 828 (TTAB 1993).

As noted, the application underlying Respondent's Registration was filed on March 27, 2019. Respondent may rely upon this date for its priority. Unless Respondent can prove an earlier date of use than its underlying application filing date, in order to prevail on priority Petitioner need only establish a first use date earlier than March 27, 2019. 15 U.S.C. § 1057(c); *Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134, 1140-41 (TTAB 2013); *cf. Brewski Beer Co. v. Brewski Brothers Inc.*, 47 USPQ2d 1281, 1284 (TTAB 1998) ("Of course, petitioner [who owns a registration] or respondent may rely on its registration for the limited purpose of proving that its mark was in use as of the application filing date"); *Intersat Corp. v. Int'l Telecomms. Satellite Org.*, 226 USPQ 154, 156 n. 5 (TTAB 1985) ("The earliest date of first use upon which [defendant] can rely in the absence of testimony or evidence is the filing date of its application").

In its brief in opposition to Petitioner's motion for summary judgment, Respondent asserts that its "date of first use is at least as early as **June 13, 2016**" (emphasis in original), 30 TTABVUE 9, which is the date Respondent provided in its answers to Petitioner's interrogatory Nos. 5-6 inquiring of Respondent's first sales of gift baskets and candy under the mark, 25 TTABVUE 142-43. This date is earlier than its alleged first use in commerce date.

Considered together, the unassailed Izumi and Narita declarations, supported by a copy of an Amazon order, 25 TTABVUE 119, state that Petitioner's first sale of TONOSAMA branded goods, including candy, in the U.S. was March 27, 2016, *id.* at 31, 33. *See W. Fla. Seafood Inc. v. Jet Rests. Inc.*, 31 USPQ2d 1663 ("one should look

14

at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use."). Although the documentary evidence is minimal with respect to sales of candy subsequent to Petitioner's date of first use, the Izumi and Narita declarations present the undisputed fact that Petitioner first used in commerce the TONOSAMA mark with candy on March 27, 2016. This is the priority date on which Petitioner may rely.

We need not decide whether Respondent's assertion that its date of first use is at least as early as June 13, 2016, raises a genuine dispute of material fact, because "[w]hether we accord Respondent the priority filing date on the face of [its] registration or the earlier priority filing date now alleged to be the accurate date," there is no genuine dispute that Petitioner's prior use date of the TONOSAMA mark on candy is earlier than either priority date asserted by Respondent. *Kemi Organics, LLC*, 126 USPQ2d at 1605. We thus find that there is no genuine dispute that Petitioner has priority.

### B. Likelihood of Confusion

Our determination under Trademark Act Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) ("*DuPont*") (cited in *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 113 USPQ2d at 2049); *see also In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). "In discharging this duty, the thirteen *DuPont* factors 'must be considered' 'when [they] are of record.'" *In re Guild Mortg.*

*Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests. Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997); *DuPont*, 177 USPQ at 567).

"Not all *DuPont* factors are relevant in each case, and the weight afforded to each factor depends on the circumstances. Any single factor may control a particular case." *Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994, 2020 USPQ2d 10341, at *3 (Fed. Cir. 2020) (citing *Dixie Rests.*, 41 USPQ2d at 1406-07). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods or services. *See In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944, 1945-46 (Fed. Cir. 2004); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."); *see also In re i.am.symbolic, llc*, 866 F.3d 1315, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017).

As discussed above, Petitioner has established priority of use of the TONOSAMA mark on candy. As to the first two *DuPont* factors, Petitioner asserts, and Respondent does not dispute, that the parties' respective marks, TONOSAMA and TONOSAMA, are identical, 25 TTABVUE 17, and that the parties' respective goods are legally identical in part ("candy chocolate" and "candy") and otherwise related ("candy chocolate" and "gift baskets containing candy"), *id.* at 17-19. Respondent asserts no arguments or evidence disputing the similarity of the parties' marks or relatedness

16

of the goods. *See* 30 TTABVUE. We find no genuine dispute as to the similarity of the marks and the relatedness of the goods.[7]

As to the third *DuPont* factor, channels of trade, it is undisputed that Petitioner's and Respondent's channels of trade both include Amazon. 25 TTABVUE 8, 32-33, 119; 30 TTABVUE 7. In addition, because Respondent's unrestricted identification of goods is not limited by channels of trade, Respondent's goods are presumed to travel in all ordinary channels of trade which include Petitioner's proven channel of trade. *Bell's Brewery, Inc. v. Innovation Brewing*, 125 USPQ2d 1340, 1345 (TTAB 2017) (although no trade channel presumptions attach to common law mark for beer, Board noted that "there are no restrictions or limitations in Applicant's description of goods" and presumed "that Applicant's beer will move in all channels of trade normal for such goods … including Opposer's trade channels"). Thus, there is no genuine dispute that the parties' channels of trade overlap.

In view thereof, we find no genuine dispute of material facts regarding the similarity of the parties' marks, relatedness of the goods and overlap in channels of trade.

Petitioner also presents arguments and evidence related to *DuPont* factors four through six regarding conditions of sale, strength of its mark and third-party marks.[8]

---

[7] In the context of likelihood of confusion, it is sufficient if likelihood of confusion is found with respect to use of the mark on any item that comes within the description of goods in the application or registration. *Tuxedo Monopoly Inc. v. General Mills Fun Group,* 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981).

[8] Petitioner also argues that the remaining *DuPont* factors "are of little or no relevance to this summary judgment motion." 25 TTABVUE 22. Respondent does not argue to the contrary.

*See* 25 TTABVUE 21-22, 51 and 58 at Exh. A, 119 at Exh. E, 155 at Exh. J. Although Petitioner has not shown an absence of a genuine dispute of material fact regarding these factors, given the identicality of the parties' marks and legally identical nature of the parties' goods, these *DuPont* factors are unnecessary to our analysis of likelihood of confusion in deciding Petitioner's summary judgment motion. *See Herbko Int'l, Inc.,* 64 USPQ2d at 1380 ("The likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus ... on dispositive factors, such as similarity of the marks and relatedness of the goods'"); *Kellogg Co. v. Pack'em Enters., Inc.,* 951 F.2d 330, 21 USPQ2d 1142, 1144 (Fed. Cir. 1991) (Board did not err in granting summary judgment on dispositive *DuPont* factor of dissimilarity of the marks, even though Opposer presented evidence and argument that other *DuPont* factors remained in dispute).

Petitioner thus has established the lack of a genuine dispute of material facts as to its entitlement to a statutory cause of action, priority, and likelihood of confusion between the parties' marks when used on Respondent's identified goods and Petitioner's proven common law goods. Petitioner therefore is entitled, as a matter of law, to judgment in its favor as to its Trademark Act Section 2(d) claim.

**Decision**

Petitioner's motion for summary judgment is hereby **granted** and judgment is entered against Respondent on Petitioner's claim under Trademark Act Section 2(d). Registration No. 5873672 will be cancelled in due course.